586

65 A.3d 361

**Marc LEVY, Appellee**

v.

**SENATE OF PENNSYLVANIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2012.

Decided April 24, 2013.

588

Emily J. Leader, PA School Boards Association, Inc., for PA School Board Association, Amicus Curiae.

Matthew Hernan Haverstick, James J. Rohn, Mark Edward Seiberling, Joshua Jon Voss, Conrad O'Brien PC, Philadelphia, for Appellant.

Rodney A. Corey, Harrisburg, James Guthrie Mann, PA House of Representatives, Tara Lynn Smith, Pittsburgh, for Republican and Democratic Caucuses of PA House of Representatives, Appellant Amicus Curiae.

Dennis A. Whitaker, Harrisburg, for Governor's Office of General Counsel, Appellant Amicus Curiae.

Paul Joseph Safier, Levine Sullivan Koch & Schultz, L.L.P., Philadelphia, Chad R. Bowman, Gayle Chatilo Sproul, Philadelphia, for Appellee.

Trent A. Echard, David Alan Strassburger, Strassburger, McKenna Gutnick & Gefsky, Pittsburgh, for Trib Total Media Inc., Appellee Amicus Curiae.

Melissa Bevan Melewsky, PA Newspaper Association, Pennsylvania Newspaper Association, Appellee Amicus Curiae.

Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.

In this appeal, we consider the interaction of the attorney-client privilege and the Right–to–Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104 ("RTKL"), in a case involving a journalist's request for documents relating to the legal representation of Senate Democratic Caucus employees. After review, we reaffirm the general rule that client identities are not protected by the attorney-client privilege but adopt

specified exceptions to this general rule. Similarly, we affirm the Commonwealth Court's determination that general descriptions of legal services included in attorney invoices are not covered by the umbrella of the attorney-client privilege but that specific descriptions that would reveal attorney-client communications are protected. Additionally, we reverse the Commonwealth Court and overturn its decision in *Signature Information Solutions, LLC. v. Aston Township*, 995 A.2d 510 (Pa.Cmwlth.2010), to the extent it determined that any reasons for denial not raised in the initial written denial of a RTKL request are waived and cannot be raised at a later stage of the RTKL process.[1]

## I. Background

On June 22, 2010, Associated Press member Marc Levy sent two written requests to the Senate's Right to Know Officer seeking "all bills, contracts and payment records related to the hiring of any outside lawyer or law firm to represent Sen. Robert J. Mellow beginning Jan. 1, 2009" and the same documents related to "any current or former employee of the Senate Democratic caucus beginning Jan. 1, 2009." Letters of Marc Levy, June 22, 2010 ("Request"). The requests came a few days after the media reported that federal authorities executed search warrants on Senator Mellow's home and office as part of a grand jury investigation.

The Senate Open Records Officer responded on August 3, 2010, providing documents "relating to legal services provided to Senator Mellow or any employee of Senator Mellow beginning 1/1/2009." [2] Letter of W. Russell Faber, Aug. 3, 2010 ("Written Denial"). The cover letter, however, stated that the

1. Although we also granted review to consider whether the Commonwealth Court could supplement the factual record before it rather than remanding for additional factfinding, we determine that the Senate waived that issue by failing to object to the Commonwealth Court's *in camera* review proceedings. Moreover, we recognize that the issue of supplementation of the record and the proper standard of review is currently pending before this Court in *Bowling v. Office of Open Records*, J–71–2011.

2. While Levy initially questioned whether the Senate provided documents related only to "employees of Senator Mellow" as opposed to "any current or former employee of the Senate Democratic Caucus" as

documents had been redacted to protect portions of the documents which the Open Records Officer contended were covered by the attorney-client privilege in accordance with Section 305(b) of the RTKL, which provides that records shall not be presumed to be public records subject to disclosure if "the record is protected by a privilege." 65 P.S. § 67.305(b)(2). The Senate supplied documents relating to five clients, totaling nearly one hundred pages, many of which were invoices from various law firms reflecting the attorney or paralegal's initials, dates and hours worked, and fees charged. However, large blocks of the documents were redacted, presumably involving itemized descriptions of the work and the clients' names.

On August 11, 2010, Levy appealed the redactions to the Senate Appeals Officer, who hears RTKL appeals relating to the Senate and serves the role that the Office of Open Records ("OOR") provides for most other Commonwealth agencies. Levy asserted that the "redactions seem to apply to [the] identity of the client and, possibly, the reason for which the attorney is being hired. That information is not considered under the umbrella of a 'work product' or a 'privilege.'" Appeal Letter of Marc Levy, Aug. 11, 2010 ("Appeal Letter"). He contended that the RTKL's "intent of transparency in government is to help ensure [that] citizens can determine whether their tax money is spent lawfully." *Id.* He argued that redacting the client identity and the reason for the legal services "renders such a determination impossible." *Id.*

On August 12, 2010, the Senate Appeals Officer, who is also the Secretary of the Senate, set a timeframe for the parties to file a memorandum of law or other documentation. While the previous filings in the case were brief letters, on August 19, 2010, the Senate filed a lengthy "Senate Response to the RTK Appeal." In this filing, the Senate observed that the RTKL provides for redaction of documents under Section 706, 65 P.S. § 67.706 ("the agency shall redact from the record the information which is not subject to access"). While the Senate

Levy requested, further proceedings not relevant to the issues before this Court reveal that the Senate supplied the appropriate documents.

reasserted its claim that the redactions were necessary to protect the attorney-client privilege, it also asserted, for the first time, that some of the redacted portions were protected from disclosure due to the work product privilege, grand jury secrecy, and the criminal investigation exception of Section 708(b)(16) of the RTKL, 65 P.S. § 67.708(b)(16).

Levy likewise responded with a lengthy letter brief. Levy emphasized that the RTKL places the burden on the Senate to prove the application of any exception. Moreover, he observed that there is a presumption of disclosure for public records, including financial documents, in the RTKL. In response to the Senate's attorney-client privilege argument, Levy contended that the rule in Pennsylvania and elsewhere provides that a client's identity and billing records are not protected unless disclosure would reveal confidential communications between the client and attorney. Levy further addressed and rejected the merits of the Senate's claims that the documents were not subject to disclosure due to the work product privilege, grand jury secrecy, and the criminal investigation exception, the merits of which are not relevant to this appeal.

On September 16, 2010, the Senate Appeals Officer made his final determination. The Officer observed that under Pennsylvania law, the party asserting the attorney-client privilege has the burden to prove that the privilege has been properly invoked. In accord with that prerequisite, the Officer concluded that the Senate had demonstrated that each of the asserted holders of the privilege sought to become a client of an attorney, communicated that to an attorney, and that all of the clients were asserting rather than waiving the privilege. The Officer, however, could not determine whether the Senate had demonstrated the other necessary criteria for attorney-client privilege: whether the communication of the client seeking the attorney's representation was made "without the presence of strangers" and "not for the purpose of committing a crime or tort." [3] Final Determination of Sept. 16, 2010, at 8.

**3.** The Appeals Officer rejected Levy's assertion that the attorney-client privilege was waived when the invoices were forwarded to the Chief

As a result, the Senate Appeals Officer provided the Senate with the opportunity to provide sworn affidavits or other probative evidence to address those issues but did not set a date by which the Senate had to file the ordered documents. The Officer also noted that the Senate raised additional reasons for the redactions based on the work product privilege, grand jury secrecy, and criminal investigation exceptions. He concluded, however, that the Senate failed to demonstrate the necessary factual predicate for assertion of those exceptions.

On October 15, 2010, when the Senate had not filed any additional documents, Levy filed a Petition for Review in the Commonwealth Court asking the court to reverse that portion of the Senate Appeals Officer's Final Determination in which he concluded that "portions of billing records containing the names of Senate clients and descriptions of legal services performed on their behalf are protected by the attorney-client privilege." Levy's Petition for Review at 4. Following a volley of filings seeking to strike portions of briefs and alert the Commonwealth Court to this Court's recent decision in *Gillard v. AIG Insurance Co.*, 609 Pa. 65, 15 A.3d 44 (2011) (holding that the attorney-client privilege applied to communications from attorney to client as well as from client to attorney), the Commonwealth Court entered an order instructing the Senate to file the affidavits and documents ordered in the Senate Appeals Officer's Final Determination. Additionally, the court ordered the Senate to "bring to the Court for *in camera* review unredacted copies of all records at issue." Commonwealth Court Order of May 31, 2011. The Commonwealth Court appointed Senior Judge Kelley as a special master to review the documents.

The Senate filed an application for clarification of the May 31st order to determine if it could satisfy the order by filing one affidavit from "a person with knowledge" or if it must file one affidavit per client.[4] Following the court's order approv-

Clerk of the Senate for payment. The Commonwealth Court affirmed this determination, and the issue has not been raised before this Court. *Levy v. Senate of Pennsylvania*, 34 A.3d 243, 254–5 (Pa.Cmwlth.2011).

4. The Senate does not appear to have objected to the process of *in camera* review generally. Therefore, although we granted review in

ing the filing of a single affidavit, the chief counsel for the Senate Democratic Caucus filed an affidavit asserting that the redacted communications in the records of each of the five clients were made in the absence of strangers and were not made for the purpose of committing a crime or tort. He further asserted that the redactions were limited to "client identity and the purpose or reasons why various attorneys were engaged in order to protect information subject to the attorney-client privilege, the work product privilege, grand jury secrecy rules and the 'criminal investigation' exception set forth in Section 708(b)(16) of the Right–to–Know Law." Affidavit of C.J. Hafner, at 2.

Following the *in camera* review on June 23, 2011, Judge Kelley issued a report under seal, which was later vacated by the Commonwealth Court. In regard to client identities, Judge Kelley observed that the Senate conceded that Senator Mellow's name should not be redacted because the legal action involving him was in the public domain. The judge concluded that the issue of whether the remaining four clients' identities, whose names had not been publicly revealed, should be deemed protected by the attorney-client privilege was a question of law for the Commonwealth Court to determine.

Turning to the descriptions of legal services, Judge Kelley noted that the Senate argued that revelation of the legal descriptions would disclose legal strategy and investigation details that would reveal confidential communications between the client and the attorney. Judge Kelley agreed with the Senate but only "[t]o the extent that the documents specify the issues or laws researched by the attorneys, specific services provided and the names of individuals with whom the attorneys communicated" because that information could reveal confidential communications and litigation strategy, which is privileged. *Levy v. Senate of Pennsylvania*, 34 A.3d 243, 257 (Pa.Cmwlth.2011) (Report of Special Master). Conversely, he concluded that general descriptions of legal services, such as "memo," "telephone call," or "research" were not

part to consider the Senate's challenge to this process, we now determine that the Senate waived this issue.

protected by the attorney-client privilege. Judge Kelley provided a chart of the relevant documents indicating his recommendations for which redactions should remain in place to protect attorney-client privilege and which redactions should be removed.

In October, 2011, an *en banc* panel of the Commonwealth Court issued its decision accepting Judge Kelley's recommendations as supplemental findings and conclusions of the *en banc* panel. Opening its discussion with a very brief two-sentence analysis, the Commonwealth Court concluded that the Senate had waived all its alternate bases for redaction, such as attorney-work product, grand jury secrecy, and the criminal investigation exceptions, by failing to raise them in its initial Written Denial of Levy's Request, citing its decision in *Signature Information*, 995 A.2d 510.

Turning to the attorney-client privilege argument, the court recognized that the long-standing privilege was "in tension with the purpose of the [RTKL], which is remedial legislation designed to promote access to official government information." *Levy*, 34 A.3d at 248. It observed that under the RTKL, legislative records are presumed to be public records, except that a document protected by a privilege is excluded from the definition of public records. Considering the Senate's assertion of privilege, the court reiterated the general rule that client identities are not protected by the attorney-client privilege. *Id.* at 250–51 (relying upon, *inter alia, In re Seip's Estate*, 163 Pa. 423, 30 A. 226 (1894); *Beeson v. Beeson*, 9 Pa. 279, 1848 WL 5605 (Pa.1848)). Similarly, the court determined that descriptions of legal services generally were not protected. The court, however, considered a "legal advice" or "confidential communications" exception to the general rule. While no Pennsylvania state court has applied such an exception, the Commonwealth Court noted that other courts have found one when "so much of the actual communication had already been established, that to disclose the client's name would disclose the essence of a confidential communication." *Id.* at 252 (quoting *United States v. Liebman*, 742 F.2d 807, 809 (3d Cir.1984)).

Applying the general rule and the exception to the documents reviewed by Judge Kelley *in camera,* the Commonwealth Court affirmed the redaction of "specific descriptions of legal services which implicate confidential communications between the clients and the attorneys." *Levy,* 34 A.3d at 254. It concluded, however, that general descriptions are not protected by attorney-client privilege because they do not reveal confidential communications. Turning to client identities, the court recognized that redaction was not appropriate as to Senator Mellow, as his name was already revealed in the original document request. Considering the other four clients, the court concluded that their names were not subject to the confidential communications/legal advice exception because all references to confidential communications or legal advice had already been redacted from the invoices and other documents.

■ Upon the Senate's petition for allocatur, we granted review to consider three issues: (1) whether client identity is protected by the attorney-client privilege, (2) whether descriptions of legal services are protected by the attorney-client privilege, and (3) whether an agency waives any reasons for non-disclosure that were not raised in the initial written denial. All of the questions presented in this case are questions of law. Therefore, our standard of review is *de novo* and our scope of review is plenary. *See Hearst Television, Inc. v. Norris,* 54 A.3d 23, 29 (Pa.2012).

## II. Attorney–Client Privilege

The first two issues involve the attorney-client privilege and whether it protects client identities and descriptions of legal services from disclosure under the Right to Know Law. The RTKL is a relatively new law effective in 2009, which replaced the Right to Know Act and significantly expanded public access to governmental records, including financial records of legislative agencies such as the Senate of Pennsylvania, with the goal of promoting government transparency. *See infra* at 32–34, 65 P.S. § 67.303 ("A legislative agency shall provide legislative records in accordance with this act.").

The RTKL, however, specifically exempts privileged documents from disclosure by defining public records subject to disclosure as "[a] record, including a financial record, of a Commonwealth or local agency that . . . is not protected by a privilege." 65 P.S. § 67.102; *see also* 65 P.S. § 67.305(a) ("A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if . . . the record is protected by a privilege."). Similarly, Section 305(b) provides that a "legislative record in the possession of a legislative agency . . . shall be presumed to be available in accordance with this act," but that the presumption "shall not apply if . . . the record is protected by a privilege." 65 P.S. § 67.305(b).[5] The RTKL defines privilege to include "[t]he attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth." 65 P.S. § 67.102. While an agency "may exercise its discretion to make any otherwise exempt record accessible," it does not have such discretion if the record is privileged. 65 P.S. § 67.506(c)(2). Accordingly, there is no dispute that if the client identities and descriptions of legal services at issue in this case are protected by the attorney-client privilege, then they are likewise protected from disclosure under the RTKL. Accordingly, we must consider the applicability of the attorney-client privilege generally.

This Court has repeatedly noted that the attorney-client privilege "is deeply rooted in our common law" and is "the most revered of our common law privileges." *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327, 1333 (1986). The General Assembly has defined attorney-client privilege identically for purposes of criminal and civil law: "In a criminal proceeding [or civil matter] counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon

5. A legislative record includes, *inter alia*, financial records. 65 P.S. § 67.102.

the trial by the client." 42 Pa.C.S. §§ 5916, 5928. We recently observed that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Gillard*, 15 A.3d at 47 n. 1 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)); *see also id.* at 57. We acknowledged, however, that the attorney-client privilege is often in tension with the truth-determining process of the justice system, *id.* at 57, and, in this case, with the RTKL's goal of government transparency. In balancing these competing purposes, we note that not all information passed between client and attorney is privileged, but rather the privilege is limited to communications related to the legal advice sought by the client. Paul R. Rice, *Attorney–Client Privilege in the United States*, § 6:14 (2012).

## A. Client Identities

█ Turning to the issues presented in the case at bar, both parties agree that client identities generally are not protected by the attorney-client privilege. Additionally, while acknowledging that this Court has not spoken directly to the issue, both parties accept the availability of exceptions to this general rule in cases where the disclosure of the client's identity would reveal legal advice or confidential communications under some specific factual scenarios. The Senate, however, asserts that the Commonwealth Court improperly limited the exception to criminal contexts when it quoted this Court's decision in *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 531–32 (2005) (plurality, in relevant part) (citing a federal case "holding attorney-client privilege does not protect fee arrangements absent strong probability that disclosure would implicate client in criminal activity for which client sought legal advice"). Instead, the Senate favors a holding that "the attorney-client privilege protects client identity (or any information for that matter) when revealing it would likely expose confidential communications or legal advice." Brief for Senate at 16.

The Senate also argues that the Commonwealth Court erred in its application of the exception in regard to at least one client, where the relevant documents, with the client's name redacted, contained a subject line referencing a grand jury investigation.[6]  The Senate argues that revealing the client's identity could only "implicate that particular client in the criminal activity that is the subject of the grand jury investigation for which the client sought legal advice." Brief of Senate at 17.  The combination of the client's identity and the scope of the representation, according to the Senate, would reveal confidential communications of the client to the attorney, in essence that the client is "involved (either as a witness, subject, or target) in a grand jury investigation." *Id.* The Senate continues that "the identity was only communicated in confidence and was expected to remain confidential; thus, by any fair standard, it should remain confidential and privileged." *Id.* Moreover, the Senate contends that revelation of the client's name would violate the purpose of the attorney-client privilege because it would reveal information that would not exist but for the client's assumption that the attorney-client privilege was in force.  It argues that once the client's name is known "there is nothing left to reveal to know why the client sought advice of counsel." Reply Brief of Senate at 7.[7]

Conversely, Levy contends that the court correctly set forth and applied the rule to this case, holding that none of the client identities were privileged because the confidential communications had been redacted from the documents previous-

6. The Senate refers specifically to documents 140a–41 a, 143a, 144a, 145a–46a in the Reproduced Record.

7. Numerous *amici curiae* have filed briefs in this case.  The Pennsylvania School Boards Association takes a more extreme position than does the Senate, arguing that an entire document is exempt from disclosure if part of it is privileged because the RTKL defines a "public record," which is subject to disclosure, as a document that is "not protected by a privilege." 65 P.S. § 67.102. While we note that this argument would seemingly make the redaction provisions of the RTKL superfluous, we do not address this argument as it was not raised by the Senate.  The Republican and Democratic Caucuses of the Pennsylvania House of Representatives also file an *amicus* brief concurring with the Senate on this issue.

ly. In regard to the documents referencing the grand jury investigation, Levy rejects the Senate's argument that the client's name in conjunction with "grand jury investigation" is tantamount to a confidential communication. Instead, Levy maintains that merely knowing that the communication involved a grand jury investigation does not disclose confidential communications between the client and the attorney, regarding strategy or legal tactics. Levy also argues that the mere fact that a client is seeking counsel regarding a grand jury investigation does not implicate the client in criminal activity, as is relevant to some of the exceptions described below. He notes that the Senate acknowledges that a client could be seeking legal advice if he or she were a grand jury witness, without being implicated in criminal aspects of the grand jury investigation. Levy also rejects any suggestions that the privilege should apply because the clients had an expectation that their identities would not be revealed. Levy argues that there "can be no reasonable expectation that the Commonwealth will keep its finances secret from the general public." Brief for Levy at 21 n. 4 (quoting *Pa. State Univ. v. State Emps.' Ret. Bd.*, 594 Pa. 244, 935 A.2d 530, 540 (2007)).[8]

Like many other jurisdictions, this Court has previously held that client identities are not protected by the attorney-client privilege because the identity of the client is rarely relevant to the legal advice sought. *In re Seip's Estate*, 30 A. at 227 ("The mere fact of employment is not privileged; but, from the nature of the relation between client and counsel, it is open to inquiry in any court in which the counsel appears as such."). Conceptually, the privilege requires a relationship between an attorney and a client such that the identity of the client is a prerequisite to the existence of the privilege. R.M. Weddle, Annotation, *Disclosure of Name, Identity, Address, Occupation, or Business of Client as Violation of Attorney–Client Privilege*, 16 A.L.R.3d 1047, § 2 (2012). Moreover, in many situations courts have concluded a client's identity is not

8. The Pennsylvania Newspaper Association submits an *amicus curiae* brief in support of Levy on this issue.

protected because litigants have a right to know their opposing party. *Id.*

Many courts, including the Superior Court and the Court of Appeals for the Third Circuit, have concluded that client identities, while generally not privileged, should be protected in limited circumstances. Courts have applied exceptions to the general rule where, under unusual facts of a specific case, revelation of the client's identity would reveal information otherwise protected by the attorney-client privilege, thus undermining the privilege's purpose of encouraging open communication between attorney and client. The exceptions fall into the overlapping categories of "confidential communication," "legal advice," and "last link."

■ The confidential communication and legal advice exceptions both address factual scenarios where information has been previously disseminated beyond the client and attorney about the facts of a case supplied to the attorney by the client, legal advice given to the client by the attorney, or other confidential communications between the client and attorney, where the opposing party is unaware of the identity of the client. The Court of Appeals for the Third Circuit described this exception as applying "where so much of the actual attorney-client communication has already been disclosed that identifying the client amounts to full disclosure of the communication." *United States v. Liebman,* 742 F.2d 807, 809 (3d Cir.1984); *see also N.L.R.B. v. Harvey,* 349 F.2d 900, 905 (4th Cir.1965); *Baird v. Koerner,* 279 F.2d 623, 632 (9th Cir.1960).

These exceptions arise occasionally in tax cases where the attorney has interacted with the taxing authority on behalf of a client, without naming the client, regarding issues that could result in fines or criminal penalties if the name of the client were divulged. *See* Rice, § 6:16 (citing, *inter alia, Baird,* 279 F.2d 623 (applying privilege where lawyer provided legal advice and forwarded money to the Internal Revenue Service for an anonymous client for payment of back taxes to avoid the assessment of penalties in the event of an audit)). The Court of Appeals for the Third Circuit in *Liebman* held that

clients' identities were privileged in a case where the Internal Revenue Service sought the names of clients who had paid monies to attorneys in connection with obtaining information about specific tax shelters, which the IRS contended were not tax-deductible attorney fees but, instead, brokerage fees. The court noted that disclosure of the clients' names would reveal confidential advice about tax shelters. The court continued, "it is the previously revealed *confidence*, not the fact of potential criminal prosecution, which accounts for the privilege." *Liebman*, 742 F.2d at 810 (emphasis in original, quoting *Grand Jury Empanelled February 14, 1978 (Markowitz)*, 603 F.2d 469, 473 n. 4 (3d Cir.1979)); *see also In the Matter of Witnesses Before The Special March 1980 Grand Jury*, 729 F.2d 489, 494–5 (7th Cir.1984); *In re Horn*, 976 F.2d 1314, 1317 (9th Cir.1992) (internal quotations omitted).

While largely overlapping and sometimes used interchangeably with the confidential communication/legal advice exceptions, the "last link" exception has been questioned because it focuses not on the confidentiality of the attorney-client relationship and the client's reason for seeking the legal advice but, instead, on the potential negative consequences to the client if the identity is revealed. *Rice*, § 6:17. It has been described as applying where "the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1027 (5th Cir.1982).

In deciding which if any of these exceptions to adopt, we note that the purpose of the attorney-client privilege is to encourage clients to provide information freely to their attorneys to allow the attorney to give "sound and informed advice" to guide their clients' actions in accordance with the law. *Upjohn*, 449 U.S. at 390, 101 S.Ct. 677. As the privilege encourages clients to speak openly with their counsel, we recognize that in many cases, "[t]he privileged communications kept from the court do not really represent a 'loss' of evidence since the client would not have written or uttered the words absent the safeguards of the attorney-client privilege." *Rice*,

§ 2:3; *see also Gillard,* 15 A.3d at 57. We are further cognizant that to attain the privilege's goals, "the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege . . . is little better than no privilege at all." *Upjohn,* 449 U.S. at 393, 101 S.Ct. 677.

■ Consistently with many of our sister courts, we hold that, while a client's identity is generally not privileged, the attorney-client privilege may apply in cases where divulging the client's identity would disclose either the legal advice given or the confidential communications provided. *Cf. Maguigan,* 511 A.2d at 1334 (recognizing in dicta the potential application of the attorney-client privilege to a client's location, which is not generally privileged, if "the information sought went to the heart of the legal advice sought by the client."). We do not adopt the "last link," or some of the framings of the other categories of exceptions, because of their focus on the potential negative consequences of the disclosure rather than on whether exposing the identity will divulge otherwise protectable information. While we do not view the Commonwealth Court's articulation of the exception below as limited to criminal cases, we affirmatively hold that the exception applies in both civil and criminal cases. Application of the exception, however, will involve case specific determinations of whether revealing the otherwise non-privileged identity will result in the disclosure of privileged information based upon what has been previously disclosed.

As applied to this case, the Senate only seeks application of the exception as to a handful of documents. The first document is a letter from counsel to the client with a subject line of "Re: Grand Jury Investigation." R.R. at 140a–41. The letter is a confirmation of the counsel's agreement to represent the client, whose name the Senate redacted. Significantly, as found by Judge Kelley as Special Master, the Senate redacted approximately seven lines of text involving the "specific nature of representation," and those redactions were affirmed by the Commonwealth Court. *See Levy,* 34 A.3d at 260. The letter continued with detailed, but generic, information about coun-

sel's hourly rate and other details of charges and billing procedures. The letter further notes that, while the Senate will pay the legal fees "during the ongoing investigation," the unnamed client is the client rather than the Senate. R.R. at 140a. Additionally, the letter states, "I do not owe a duty of loyalty and confidentiality to anyone but you." *Id.* Given the substantial redactions of confidential communications in the body of the document, we hold that the Commonwealth Court correctly concluded that there was no need to redact the client's name. Nothing was revealed other than the fact of counsel's engagement and that it related to a grand jury investigation.

The other three documents for which the Senate seeks redaction of the client's name are a Senate Expense Voucher indicating a request for payment of nearly $6,000 of "legal services" without any indication of the content of the legal services, R.R. at 142a; a two sentence letter from the client to the Chief Clerk of the Senate approving payment of the law firm's invoice, R.R. at 143a; and the invoice referenced in the previous two documents merely indicating the dates and charges without further description of the content or purpose of the attorney's work, R.R. at 144a. We agree with the Commonwealth Court that these documents do not involve the disclosure of privileged legal advice or confidential communications that would allow for the protection from disclosure of the client's name. Accordingly, we affirm the Commonwealth Court's decision on this issue.

## B. *Descriptions of Legal Services*

The Senate maintains that the Commonwealth Court erred in its statement of the law regarding the applicability of the attorney-client privilege to descriptions of legal services, such as those in the invoices in the case at bar. It contends that the Commonwealth Court set forth a blanket rule that "fee agreements and billing records are generally subject to disclosure," when our caselaw has provided that the records are subject to disclosure only when they do not reveal confidential communications between the attorney and client. Brief for

Senate at 17 (quoting *Levy*, 34 A.3d at 251). The Senate, however, acknowledges that the Commonwealth Court applied the correct rule in the case at bar, approving numerous redactions of confidential communications in the invoices. Indeed, the Senate does not specifically request any additional redactions of the invoices. Instead, the Senate felt compelled to appeal because "as a recipient of numerous RTKL requests, it needs certainty as to what the bounds of the law are and what is and is not subject to privilege." Brief for Senate at 18 n. 10.[9]

Levy asserts that the Commonwealth Court did not set forth a *per se* rule as suggested by the Senate, but rather properly adopted Judge Kelley's line-by-line analysis of sixty separate redactions made by the Senate, of which many were approved. Levy contends that the Commonwealth Court's holding is consistent with the opinion of dissenting members of this Court in *Schenck v. Township of Center, Butler County*, 601 Pa. 548, 975 A.2d 591, 599 (2009) (Saylor, J. dissenting from per curiam affirmance), who opined that billing records should not be provided a blanket exception under the attorney-client privilege but instead should be subject to *in camera* review to determine if privileged confidential communications would be disclosed. Levy notes that the Senate does not challenge any specific voiding of a redaction such that there does not appear to be a conflict on this issue.

■ Despite the Senate's protestations, we do not view the Commonwealth Court as setting forth a *per se* rule that descriptions of legal services are not protected by attorney-

9. The Republican and Democratic Caucuses of the Pennsylvania House of Representatives file a brief addressing this issue. The Caucuses raise the concern that if attorney-client privilege does not extend to legal descriptions in invoices then there will be an unnecessary tension between a desire to have detailed billing statements permitting agencies to scrutinize the expenses paid with public funds versus an inclination toward summary invoices to prevent the disclosure of privileged information. To prevent the need for attorneys to review the invoices for privileged information, the Caucuses recommend a prophylactic rule that all descriptions of legal services should be redacted. *Amicus curiae* Pennsylvania School Boards Association also files a brief on this issue.

client privilege. Rather, we approve the Commonwealth Court and its Special Master Judge Kelley's careful line-by-line analysis of the content of the invoices. As with our analysis of client identities, the determination of the applicability of the attorney-client privilege does not turn on the category of the information, such as a client's identity or address, or the category of a document, such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. *Cf. Chmiel*, 889 A.2d at 531–32; *Maguigan*, 511 A.2d at 1334. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the RTKL. As the Senate does not contest any individual redaction of the invoices, we affirm the decision of the Commonwealth Court on this issue.

### III. Signature Information Rule

The next issue before this Court is whether an agency waives any reasons for denial not raised in its initial written denial in response to a RTKL request. In this case, although the Senate initially only raised attorney-client privilege as the reason for redacting documents, it presented the Senate Appeals Officer with additional reasons for protecting the documents, based on the attorney-client work product doctrine, grand jury secrecy, and the "criminal investigation" exception set forth in Section 708 of the RTKL, 65 P.S. § 67.708(b)(16). The Senate Appeals Officer found these assertions failed due to lack of factual support. The Commonwealth Court affirmed on a different basis, holding that the Senate had waived these additional reasons when it failed to include them in its original Written Denial to Levy. The court cited its recent decision in

*Signature Information* for the proposition that any reasons not raised in the initial written denial are deemed waived *per se*. The Senate presently argues that the *Signature Information* Rule is a flawed, judicially-created waiver rule and asks this Court to overturn the Commonwealth Court's caselaw in this regard.

Before delving into the parties' arguments, we first consider the RTKL's procedure relevant to this case. Chapter Five of the RTKL addresses access to records and provides that each agency have an open records officer to keep track of requests filed with the agency. 65 P.S. § 67.502. The next section provides that the OOR shall designate an appeals officer to hear appeals from the open records officer's decision for all Commonwealth and local agencies, except for judicial, legislative, and other specified agencies that must designate their own appeals officers. 65 P.S. § 67.503

Chapter Seven sets forth the procedure for requests and access to documents. It provides that a requester may file requests either verbally or in writing; however, if the requester wishes to utilize the procedures of the act, the request must be written. 65 P.S. § 67.702; *see also* § 67.703 (describing the details of a written request). While other sections of this chapter address issues unrelated to those presented herein, Section 706 provides that if an agency determines that a document contains information that is "not subject to access" under the RTKL, then the agency should redact that information and provide access to the rest of the document. Any redacted information will be deemed a denial for purposes of the RTKL.

Section 708 addresses "exceptions" from disclosure of records. As with documents protected by a privilege discussed above and those protected by other state or federal laws, the RTKL excludes a variety of documents in Section 708 from the definition of "public record" and from the presumption that a document is a public record subject to disclosure. 65 P.S. §§ 67.102, 67.305. Section 708 provides that the burden of proving that a record is "exempt from public access shall be on the legislative agency receiving a request by a preponder-

ance of the evidence." 65 P.S. § 67.708(a)(2). Subsection (b) of this section presents an extensive list of thirty exceptions, many with multiple subparts, spanning nearly eight pages of the relevant statutory volume. While the applicability of some of the exceptions requires little analysis, such as DNA or RNA records, other exceptions require more subtle consideration, such as whether disclosure of the record "creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system." 65 P.S. §§ 67.708(b)(19), (3).

As relevant to our ultimate analysis, while many of the exceptions are intended to protect matters involving public safety, a number of the exceptions shield the disclosure of personal information held by the governmental agency such as "an individual's medical, psychiatric or psychological history or disability status," social security and drivers' license numbers, home addresses of law enforcement officers and judges, academic transcripts, records of a criminal investigations including "[v]ictim information ... that would jeopardize the safety of the victim," information that would disclose a confidential source, including those covered under the Whistleblower Law, DNA and RNA records, an individual's library circulation records, or a "record identifying the name, home address or date of birth of a child 17 years of age or younger." 65 P.S. §§ 67.708(b)(5), (6), (15), (16)(v), (17)(iii), (19), (23), (30).

Chapter Nine of the RTKL addresses the agency's response to a request. Section 901 provides that an agency has five days from the date a written request is received by the open-records officer to respond to the request. If the agency does not act within those five days, the request is deemed denied. 65 P.S. § 67.901. However, the agency may utilize an extension of up to thirty additional days if the agency determines that one of seven situations applies, including that the request requires the redaction of documents or that "a legal review is necessary to determine whether the record is a record subject to access under the act." 65 P.S. § 67.902(a). The agency, however, must notify the requester that the request is being reviewed, the reason for the review, and an expected response

date. 65 P.S. § 67.902(b). If the agency believes the review will take longer than thirty days, the request shall be deemed denied unless the requester agrees in writing to an additional, specified extension. 65 P.S. § 67.902(b). As particularly relevant to the issue upon appeal regarding whether the agency must list all its reasons for denial in its written response, the RTKL provides as follows:

If an agency's response is a denial of a written request for access, whether in whole or in part, the denial shall be issued in writing and shall include:

(1) A description of the record requested.

(2) The specific reasons for the denial, including a citation of supporting legal authority.

(3) The typed or printed name, title, business address, business telephone number and signature of the open-records officer on whose authority the denial is issued.

(4) Date of the response.

(5) The procedure to appeal the denial of access under this act.

65 P.S. § 67.903.

Chapter Eleven sets forth the appeal process of an agency determination. Within fifteen days of the denial or deemed denial, a requester may appeal to the OOR or, as in this case, the judicial, legislative or other appeals officer. 65 P.S. § 67.1101(a)(1). "The appeal shall state the grounds upon which the requester asserts that the record is a public record, legislative record or financial record and shall address any grounds stated by the agency for delaying or denying the request." 65 P.S. § 67.1101(a)(1). The appeals officer then has thirty days to issue a final determination or the appeal is deemed denied. 65 P.S. § 67.1101(b). The officer must also set a schedule for the parties to submit documents and may hold a hearing as needed. 65 P.S. §§ 67.1101(b), 1102(a). The decision is a final order. 65 P.S. § 67.1101(b).

The next chapter, Chapter Thirteen, provides for judicial review.[10] In the case of a decision of an appeals officer related to a Commonwealth, legislative, or judicial agency, the agency or the requester has thirty days to "file a petition for review or other document as might be required by rule of court with the Commonwealth Court." 65 P.S. § 67.1301.[11] The section further provides that the court's decision "shall contain findings of fact and conclusions of law based upon the evidence as a whole." 65 P.S. § 67.1301. "The record before a court shall consist of the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. § 67.1303(b) (footnote omitted). In addition to other provisions, the RTKL provides, "A court may impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith." 65 P.S. § 67.1305.

With this background, we consider the Senate's argument that the Commonwealth Court erred in continuing to apply the *Signature Information* Rule. In *Signature Information,* 995 A.2d 510, the Commonwealth Court considered a case involving a requester seeking documents related to a township's real estate taxes. The township denied the request under Section 704 of the RTKL, which provides that "an agency may respond to a request by notifying the requester that the record is available through publicly accessible electronic means." 65 P.S. § 67.704. The requesters appealed to the OOR, which provided the parties seven days to submit additional information. Outside of the seven day period, the township provided an "explanation" claiming that it denied the request because Section 705 of the law provides that "an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705. The OOR

10. The RTKL currently includes only odd numbered chapters.

11. For appeals related to local agencies, the agency or requester may file a petition for review or other document with the court of common pleas of the relevant county. 65 P.S. § 67.1302.

Appeals Officer concluded that the township improperly denied the request.

When the case reached the Commonwealth Court, that court considered Section 903(2), requiring the agency to provide the "specific reasons for the denial" in the initial written denial, Section 1101(a)(1), providing that the requester's appeal "shall address any grounds stated by the agency" for denial, and Section 1102, directing the appeals officer to set a schedule for the parties to "submit documents in support of their positions." 65 P.S. §§ 67.903(2), 67.1101(a)(1), 67.1102. The court concluded, "section 1102(a) of the Law does not permit an agency that has given a specific reason for a denial to assert a different reason on appeal. Section 1102(a) of the Law permitted the Township only to submit documents in support of its stated position." *Signature Information*, 995 A.2d at 514 (emphasis removed). The court opined that if an agency "could assert any improper reason for the denial of a right-to-know request and would not have to provide an arguably valid reason unless and until the requester filed an appeal," it "would make a mockery of the process set forth in the Law." *Id.* The Commonwealth Court held: "It is not fair or just to a requester to allow an agency to alter the reason given for a denial after the requester has taken an appeal based on the stated reason" and that "permitting an agency to set forth additional reasons for a denial at the appeal level does not allow for an expeditious resolution of the dispute." *Id.* The Commonwealth Court has repeatedly enforced this rule to prohibit agencies from presenting new reasons at the appeal officer stage.

The Senate contends that the *Signature Information* Rule is contrary to the RTKL. The Senate asserts that the language of the RTKL does not support the holding that only an agency's "stated" reasons for denial can be furthered on appeal. Instead, the Senate observes that the RTKL requires that the agency's written denial include the "specific reasons for the denial" without requiring that the agency include "all" the specific reasons nor does the section provide for waiver of any reasons not raised. *See* 65 P.S. § 67.903(2). It notes that

Section 1102(a)(1) provides that the appeals officer set a schedule for the parties to submit documents "in support of their positions," which it views as not limited to previously "stated" positions. The Senate further notes that the proceeding before the appeals officer is "the first neutral review of an agency's denial" and more "akin to the trial court process of any ordinary dispute where no one party is yet entrenched in a position or could be prejudiced by 'new' arguments." Brief of Senate at 25. It suggests that the written denial stage is more akin to the period before a plaintiff files a complaint in an ordinary lawsuit. The Senate, nevertheless, asserts that an agency must raise all its challenges before "the appeals officer closes the time for submissions" and "takes the matter under advisement." Brief for Senate at 25–26 n. 17.

The Senate also rejects the Commonwealth Court's suggestion in *Signature Information* that, if allowed to later amend its rationales, agencies will assert improper reasons for denial initially and "would not have to provide an arguably valid reason unless and until the requester filed an appeal." 995 A.2d at 514. The Senate notes that the rule is not needed to counteract this argument because the RTKL specifically provides sanctions for bad faith actions of agencies which would cover the situation envisioned.

The Senate responds to another premise of *Signature Information:* that permitting an agency to raise additional reasons for denial will result in delay and prejudice. The Senate contends that the addition of new arguments on appeal will not result in additional prejudice and delay because, regardless of the number or age of the reasons for denial of access, the appeals officer must render his or her decision within thirty days of the appeal pursuant to Section 1101(b)(1). Further, the Senate contends that the *Signature Information* Rule will add delay because an agency will be forced to utilize the thirty-day extension of time allowed for legal review under Section 902(a)(4) to ensure that it includes all possible reasons for denial in its written denial, rather than merely offering an immediately apparent reason for denial within the initial five-

day period. Moreover, the Senate maintains that a requester would not be prejudiced by the addition of new reasons for denial because the appeals officer may set a schedule to allow the requester to submit documents. It maintains that "[t]here is nothing to prevent the appeals officer from soliciting briefing first from the agency, and thereafter permitting the requester to fully respond." Brief for Senate at 28 (emphasis removed).

The Senate also contends that the Commonwealth Court's rule has created an improper two-track appeals process for written denials versus deemed denials. It observes that, in at least one decision, the OOR refused to apply the *Signature Information* Rule to a case involving a deemed denial where no reasons had previously been asserted, but instead held that the rule only prevented agencies from changing their reasons for non-disclosure on appeal. *See* Brief of Senate at 22 (citing *Bray v. Montgomery County*, No. AP 2010–1218, slip op., 2011 WL 382844 (OOR Jan. 24, 2011)).[12] It argues that the *Signature Information* Rule provides an incentive for agencies to remain silent and deem a request denied rather than risk waiver of reasons not raised in a written denial, which is contrary to the disclosure purposes of the RTKL.

Moreover, the Senate continues that the *per se Signature Information* Rule results in the forced disclosure of records which the General Assembly specifically shielded from disclosure under the RTKL, such as those protected by a privilege, citing 65 P.S. §§ 67.102, 67.305(b)(2), 67.506(c)(2).[13] Indeed, it maintains that the rule led to an absurd result in *Signature Information* when the court ordered the agency to create a record, despite the contrary provisions of Section 705, because the agency failed to assert initially that the requested record did not exist in a single source. As a second example, the Senate contends that it would be irrational to allow privileges to be overcome by a ministerial act of failing to list a privilege

**12.** The Bray decision is available on the OOR website at: http://dced.state.pa.us/open-records/final-determinations/FileHandler.ashx?ID=4208.

**13.** *See supra* at 9–10.

in the written denial when the agency is otherwise forbidden from intentionally disregarding the privileges under Section 506(c)(2). 65 P.S. § 67.506(c)(2). Accordingly, the Senate asserts that the *Signature Information* Rule is misguided and unnecessary and should be overturned.[14]

Levy, in contrast, urges that we affirm the Commonwealth Court's continued application of the *Signature Information* Rule and find any reasons not raised in the agency's initial written denial waived. He argues that the language of the statute provides that the written denial "shall include ... [t]he specific reasons for the denial," which Levy views as requiring the Senate to raise all the specific reasons at that stage. 65 P.S. § 67.903(2). Levy rejects the argument that the language does not specify waiver as a sanction for failing to raise all reasons for nondisclosure. Instead, Levy focuses on the mandatory term "shall" and argues that if we adopt the Senate's reading of the statute, we will be in essence reading "shall include ... [t]he specific reasons for the denial" to have no meaning. Levy contends that the *Signature Information* Rule is consistent with Section 1101(a)(1) which provides that the requester "shall address any grounds stated by the agency for delaying or denying" the request. Levy maintains that this section would be rendered meaningless if the agency can assert new reasons for denying the records after the requester has filed its appeal. Additionally, Levy looks to the next section, Section 1102(a), providing that an appeals officer shall set a schedule for the parties "to submit documents in support of their positions." Levy argues that this language clearly refers to their established positions and not to new arguments raised before the appeals officer.

14. The Pennsylvania School Boards Association and the Governor's Office of General Counsel file separate *amicus curiae* briefs, each voicing a concern, inter alia, that the *Signature Information* Rule could allow the disclosure of individuals' personal information, arguably violating constitutional rights, due to a ministerial mistake of an agency's open records officer failing to raise the appropriate exception. The Republican and Democratic Caucuses of the House of Representatives also submit a brief in support of the Senate on this issue.

Levy rejects the Senate's arguments as hinging on flawed policy-based concerns. Levy first attempts to undermine the Senate's argument that the *Signature Information* Rule improperly creates a two-track system of appeals of written versus deemed denials. Levy contends that this conundrum does not actually exist because the Commonwealth Court has not addressed the question of waiver of reasons for denial in a standard deemed denial case, even if the OOR is permitting supplementation in such cases. Moreover, Levy contends that there is no threat that agencies would methodically utilize the deemed denial option because of the potential for sanctions to agencies acting in bad faith, 65 P.S. § 67.1305(a).

Levy also rejects the Senate's implication that the period for the initial written denial of the agency is a rushed period involving ministerial acts similar to the pre-complaint period in a standard trial, such that waiver should not apply. Instead, Levy observes that this stage is not ministerial but a critical function of the RTKL, involving twelve statutory sections. Additionally, he argues that the initial denial period is not so brief as to forbid the imposition of a waiver rule, noting that agencies have up to thirty-five days to determine if reasons for denial exist, whereas civil defendants are subject to waiver of any defenses not raised within twenty days of the filing of a complaint.

To the extent the Senate contends that waiver should not be imposed until the parties come before a neutral arbitrator at the appeals officer stage, Levy argues that the position is undercut by the fact that in the instant case the appeals officer is not neutral but rather is the Secretary of the Senate. Under the Senate's logic, Levy asserts that waiver would therefore not occur until after the proceedings before the Commonwealth Court in this case, which is clearly contrary to the statutory scheme of the RTKL.

Instead, Levy contends that the *per se* waiver rule supports the RTKL's goal of prompt disclosure of public records. He asserts that the Senate's interpretation allowing agencies to raise new reasons for denial will lead to delay as it would render the initial denial period unnecessary and start the case

"from scratch on appeal." Brief for Levy at 36. Citing several Commonwealth Court cases, Levy avers that the *Signature Information* Rule provides necessary flexibility to prevent unjust results in cases involving unique circumstances, such as when a request is insufficiently specific or when an agency merely refines its reasons on appeal. He notes, however, that no unique circumstances are present in this case.

Trib Total Media (TTM) files an *amicus curiae* brief in support of Levy, stressing its interest in expedient access to public information, which it believes is promoted by the *Signature Information* Rule requiring all reasons for denial to be raised in the initial written denial thus preventing piecemeal litigation. TTM emphasizes the remedial purpose of the RTKL and argues that any ambiguity in the statute should be resolved in favor of the purpose of the RTKL: "open access to information, at a reasonable cost, and in a timely manner." Brief for TTM at 5. TTM rejects the argument that the RTKL's bad faith provisions imposing fees and costs on agencies provide the necessary deterrence because the bad faith provisions require the requester to hire attorneys and pursue further litigation in derogation of the purpose of the RTKL. TTM also emphasizes that the RTKL classifies the proceeding before the appeals office as an appeal, noting that the General Assembly is well aware of the "elementary principle of law that a party cannot raise issues on 'appeal' that were not preserved." Brief of TTM at 18.

Our review of the *Signature Information* Rule requires us to interpret language of several provisions of the RTKL. As with any question of statutory interpretation, our object is to "ascertain and effectuate the intention of the General Assembly" and "if possible, to give effect to all [a statute's] provisions." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When the statutory language is ambiguous, however, we may ascertain the intention of the General Assembly by considering such things as "[t]he occasion and necessity for the statute," "[t]he mischief to be remedied,"

"[t]he object to be attained," and "[t]he consequences of a particular interpretation." 1 Pa.C.S. § 1921(c). In interpreting a statute, we presume that the General Assembly does not intend an absurd result, to violate the Constitution, nor to favor a private interest over the public interest. 1 Pa.C.S. § 1922. Additionally, we interpret remedial legislation liberally to effect its object and promote justice. *See, e.g.,* 1 Pa.C.S. § 1928(c). Statutes and parts of statutes that relate to the same persons or things must be read *in pari materia.* 1 Pa.C.S. § 1932.

In this case, we must determine whether the language of the RTKL addresses whether an agency waives any reasons not raised in its initial denial of a RTKL request, specifically Section 903, addressing an agency's denial, and Sections 1101 and 1102, governing the appeal of the decision of an open records officer. Section 903 provides in relevant part, "If an agency's response is a denial of a written request for access, whether in whole or in part, the denial shall be issued in writing and shall include ... (2) The specific reasons for the denial, including a citation of supporting legal authority." 65 P.S. § 67.903. Section 1101 provides that if a request is denied or deemed denied, the requester may appeal the decision within fifteen days, and "[t]he appeal shall state the grounds upon which the requester asserts that the record is a public record, legislative record or financial record and shall address any grounds stated by the agency for delaying or denying the request." 65 P.S. § 67.1101(a)(1). In turn, Section 1102 requires the appeals officer to "[s]et a schedule for the requester and the open-records officer to submit documents in support of their positions." 65 P.S. § 67.1102.

Analyzing the plain language of these statutes, we acknowledge that both sides present meritorious positions. Section 903's language requires agencies to include "[t]he specific reasons for the denial." As noted by the Senate and its *amici,* the section does not specify that the agency must include "all" the specific reasons in its initial written denial nor does it indicate that any reasons not listed are waived. Conversely, the statute has no language to suggest that the agency may

provide only some or initial reasons for denial, nor does the RTKL provide any particular opportunity to raise additional reasons for denial. A similar analysis can be applied to Section 1101's requirement that the requester address "any grounds stated by the agency" and Section 1102's provision for the submission of documents "in support of their positions." Accordingly, we fail to ascertain from the plain language whether waiver applies to all reasons for nondisclosure not included in an agency's Section 903 written denial and instead determine that the language is ambiguous. Therefore, we must consider other indicators of legislative intent including "[t]he occasion and necessity for the statute," "[t]he mischief to be remedied," "[t]he object to be attained," and "[t]he consequences of a particular interpretation." 1 Pa.C.S. § 1921(c).

We have recently held that the objective of the RTKL "is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel,* 45 A.3d 1029, 1042 (Pa.2012). As the Commonwealth Court has noted, the enactment of the RTKL in 2008 was a dramatic expansion of the public's access to government documents. Whereas before a requester had the burden to prove that documents should be disclosed, the RTKL presumes documents in the possession of an agency are public records subject to disclosure, unless protected by a specific exception. 65 P.S. § 67.305. Indeed, Section 708 places the burden of proving an exception squarely on the agency by a preponderance of the evidence. 65 P.S. § 67.708. These significant changes demonstrate a legislative purpose of expanded government transparency through public access to documents.[15] The Commonwealth Court has aptly recognized

---

15. We have previously observed that the following sections of the RTKL have also been cited as supporting a legislative intent for broader public access: §§ 67.1101(a) (providing for the OOR, as a new administrative agency, to hear requesters' challenges without prior court action); 67.506(d)(1) (expanding the types of documents discoverable to include documents not in the agency's possession); 67.1304, 67.1305 (increasing the civil penalties recoverable against an agency acting in bad faith), and 67.901 (reducing the agency's time for responding to a RTKL request). *See SWB Yankees,* 45 A.3d at 1034 n. 7.

that courts should liberally construe the RTKL to effectuate its purpose of promoting "access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions." *Allegheny County Dept. of Admin. Services v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa.Cmwlth.2011) (citation omitted).

Additionally, as emphasized by *amicus* TTM, various provisions of the RTKL demonstrate an intent for an expedited determination of RTKL requests. As noted, the agency has five days to issue its initial determination, subject to a thirty-day extension. 65 P.S. §§ 67.901, 67.902. If the agency does not act or receive the agreement of the requester, the request is deemed denied at the expiration of the five or thirty-five days. *Id.* The requester then must appeal any denial within fifteen days, and the appeals officer must make a final determination within thirty days. 65 P.S. § 67.1101. Again, if the appeals officer does not act, the decision is deemed denied unless the requester agrees otherwise. 65 P.S. § 67.1101(b). Moreover, the appeals officer is not required to hold a hearing. 65 P.S. §§ 67.1101(b), 1102(a)(2). Any appeals from the final determination (or deemed denial) of the appeals officer must be filed within thirty days to the Commonwealth Court or the local Court of Common Pleas. 65 P.S. §§ 67.1301, 1302. Together, these sections provide that the parties will have the request resolved or be before an appellate court within less than four months from the initial filing of the request for public access, absent an agreement for an extension from the requester. The legislative intent for efficient resolution is justifiable given that the public's interest in government documents is often time dependent.

Given the overriding legislative intent of transparency of government and speedy resolution of requests, Levy and his *amici* have strong arguments in favor of the *Signature Information* Rule. Interpreting the language to require an agency to raise all its reasons in its initial written denial subject to waiver promotes increased disclosure of documents, as documents that might be protected by an exception not initially

raised will be disclosed to the requester. Moreover, waiver provides that there will be no need for briefing or hearings on additional reasons for non-disclosure raised at subsequent stages of the RTKL process, allowing for a speedier final determination.

Conversely, while the overriding purpose of the RTKL may relate to ensuring expanded and expedited transparency in our government, the RTKL, nonetheless, protects from disclosure documents subject to a privilege, exempt from disclosure under another federal or state law, or subject to any of the exceptions expressly and painstakingly listed in Section 708(b). 65 P.S. §§ 67.102, 67.305, 67.708(b). In these provisions, we recognize a legislative intent to shield numerous categories and subcategories of documents from disclosure in order to protect, *inter alia*, the Commonwealth's security interests and individuals' privacy rights. As noted by the Senate and its *amici*, adoption of the *Signature Information* Rule undermines the specific legislative intent to shield these documents from disclosure, merely as a consequence of an open records officer's failure to list a legitimate reason for nondisclosure on the agency's initial written denial. Indeed, the officer may have asserted what he or she thought were the most obvious reasons for denial, and failed to consider the other eight pages of potential exceptions. Additionally, given the specified statutory time frame for each stage of the RTKL process, there is little concern that the addition of new reasons for non-disclosure at the appeals officer stage will effect the speed of any ultimate decision as the appeals officer's decision must be issued within thirty days regardless of the number of asserted reasons for denial.

Moreover, we are cognizant that the efficiency of the RTKL process arguably results in informality bordering on lack of due process regarding the protections provided by the RTKL. Indeed, neither hearings nor written decisions with factual findings and legal conclusions are required at any point prior to the Commonwealth Court or the Court of Common Pleas. Members of this Court have expressed concern over the due process afforded by the system to individuals whose private

information may be disclosed through documents in an agency's control. *See Pennsylvania State Educ. Assn. v. Com., Dept. of Community and Economic Development,* 50 A.3d 1263, 1278 (Pa.2012) (Castille, J., concurring). Justices have also noted that private entities intervening later in the proceedings as interested parties may be limited in their ability to raise defenses to disclosure separate from the reasons originally raised by the agency, even though the private entities were provided no notice of the original request. *SWB Yankees,* 45 A.3d at 1048 (Castille, J., concurring). While a person with direct interest in the record may file "a written request to provide information or to appear before the appeals officer," the hearing officer may only grant the request if no hearing has been held, no decision issued, and the appeals officer believes the information will be probative. 65 P.S. § 67.1101(c). Accordingly, there is no guarantee that interested individuals will be heard or their objections to disclosure addressed. We note a recent decision of the Commonwealth Court, interestingly without reference to the *Signature Information* Rule, in which the court directed the OOR to remand to the relevant agency, the Gaming Control Board, to address substantive defenses of a third party which had not been raised by the Board in its original denial because the Board "did not have the right or authority to waive applicants' interest in keeping their application information confidential," pursuant to the Gaming Act. *Pa. Gaming Control Bd. v. Office of Open Records,* 48 A.3d 503, 513–14 (Pa.Cmwlth.2012).

Given the ambiguity of the statutory language, the competing statutory purposes, and in light of this Court's concern for individuals' due process rights under the RTKL, we determine that the Commonwealth Court erred in holding that an agency waives any reasons for non-disclosure not raised in its initial Section 903 written response. We conclude that the *per se* waiver rule set forth in *Signature Information* and its progeny is unnecessarily restrictive. Accordingly, we reverse the Commonwealth Court.

In sum, we affirm the decision of the Commonwealth Court regarding the applicability of the attorney-client privilege to

client identities and descriptions of legal services, but reverse the decision of the court to the extent it applied the *Signature Information* Rule and found waiver of any reasons for non-disclosure not raised in the Senate's original Written Denial. Consequently, we remand for consideration of the additional reasons for denial raised by the Senate to the Senate Appeal's Officer.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justice SAYLOR and McCAFFERY join the opinion.

Justice EAKIN files a concurring opinion in which Madame Justice TODD joins.

## CONCURRING OPINION

Justice EAKIN.

I agree with the majority's disposition of this case. Respectfully, I disagree with the majority's conclusion that the statute is ambiguous. That the statute does not address the specific question before us does not mean it is ambiguous—it means it is silent. While it may seem a quibbling distinction, statutory silence on a question of procedural waiver does not in my judgment comprise ambiguity, a notion involving language from which multiple meanings can be taken. Here, the issue is a waiver rule, a subject not addressed by the statute—there being no statutory language about waiver, there is nothing that is subject to multiple meanings, and hence no ambiguity.

That said, the procedural question still requires an answer. I agree with the rejection of the waiver rule of *Signature Information Solutions, LLC v. Aston Township,* 995 A.2d 510 (Pa.Cmwlth.2010). The finding that reasons not raised in an agency's initial written denial are deemed waived *per se, id.* at 514, runs contrary to the plain language of the Right to Know Law, as specific reasons for denial are not required under all

circumstances. An agency's failure to respond to requests within a specified time-frame means the request will be "deemed denied." 65 P.S. §§ 67.901, 67.902(b)(2)-(3); *see also* Majority Op., at 608–10, 65 A.3d at 375–76. The statute provides for a general denial with no indication at all of "specific reasons for the denial [or] . . . citation of supporting legal authority." 65 P.S. § 67.903(2). As the statute provides that listing no reason at all waives nothing, the *Signature Information* waiver rule (reasons not listed are waived) is contrary to the plain language of the statute.

Justice TODD joins this concurring opinion.