**UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,**

v.

**DICK CORPORATION/BARTON MALOW, et al, Defendants.**

C.A. Nos. 01–698, 01–1638.

United States District Court, W.D. Pennsylvania.

May 28, 2003.

Robert G. Watt, Kevin J. McKeon, Robert G. Barbour, Robert K. Cox, Watt, Tieder, Killian & Hoffar, McLean, VA, Thomas V. Gebler, Jr., Robb, Leonard & Mulvihill, Pittsburgh, PA, William J. Taylor, Taylor & Taylor, Jacob C. Cohn, Douglas R. Widin, John A. Wait, Philadelphia, PA, Anne C. Singer, Wolf, Block, Schorr & Solis–Cohen, Camden, NJ, for plaintiff.

Bennett D. Greenberg, Sara Farabow, Steven J. Kmieciak, David A. Blake, Sara Beiro Farabow, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, P. Brennan Hart, James A. McGovern, Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for defendants.

Jeffrey B. Balicki, Feldstein, Grinberg, Stein & McKee, Pittsburgh, PA, for Alpern, Rosenthal & Company.

Robert O. Lampl, Pittsburgh, PA, for Maverick Steel.

## MEMORANDUM ORDER

CINDRICH, District Judge.

These cases arose out of the construction of the Pittsburgh Pirates new stadium, known as PNC Park. Pending now, however, is a novel issue regarding the scope of Pennsylvania's mediation privilege. Several of the defendants and counter-plaintiffs, Dick Corporation/Barton Marlow, a Joint Venture ("DBM"), Dick Corporation, Barton Malow Company, The Sports and Exhibition Authority of Pittsburgh and Allegheny County ("SEA"), Pittsburgh Associates, and the Thornton–Thomasetti Group, Inc. ("TT") (collectively "Defendants"), reached a settlement agreement among themselves and with several entities who are not parties to this lawsuit following a mediation conducted by a professional mediator. Plaintiff, United States Fidelity & Guaranty Co. ("USF & G"), seeks discovery of the documents comprising the settlement agreement.

Magistrate Judge Sensenich, to whom this matter has been assigned, appointed retired Judge Louis Bechtle as Special Discovery Master. The order appointing the special master provided for appeals directly to the district court. In an excellent and well-reasoned report captioned "Special Discovery Master's Final Ruling No. 1" ("Report"), Judge Bechtle determined that the "Confidential Settlement Agreement and Release" (the "Settlement Agreement") and Amendment No. 4 to the Design and Construction Management Agreement ("Amendment No. 4") were not privileged under Pennsylvania's statutory mediation privilege and therefore, were discoverable. Defendants have appealed that determination.

We are satisfied that Judge Bechtle correctly interpreted the statute and applied it to the facts of this case and thus will deny the appeal and order the production of the Settlement Agreement and Amendment No. 4. We write this brief opinion because, as Judge Bechtle observed, there is a dearth of decisions from either state or federal courts concerning Pennsylvania's mediation privilege and the meaning of the statute itself is not abundantly clear. We adopt the reasoning and borrow heavily from the language of Judge Bechtle's Report.

The parties agree that the standard of review is the same as that which would apply to an appeal from a ruling of the Magistrate Judge pursuant to Local Rule 72.1.3(B) of the United States District Court for the Western District of Pennsylvania and 28 U.S.C. § 636(b)(1)(A). Accordingly, "[t]he district court is bound by the clearly erroneous rule in findings of facts; the phrase 'contrary to law' indicates plenary review as to matters of law." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3rd Cir.1992).

From my reading of the findings of fact set forth by Judge Bechtle and those argued in the briefs of the parties, there does not appear to be much, if any, disagreement about the facts. Essentially, as Judge Bechtle found, the parties attempted to mediate their dispute before a professional mediator who conducted one session on November 30, 2000. The session did not result in an agreement, either formally or in principle. A second

session was discussed, but when and if it would occur was not made clear. After the single mediation session, the parties continued to discuss a settlement on their own. During this time, the mediator had some follow up communications with the parties in which they apprised him of the ongoing settlement negotiations. Sometime between late December, 2000 and February, 2001, the parties reached a settlement agreement. The mediator had no further contact with the parties involving settlement negotiations or documents related to the settlement after December 20, 2001. A formal settlement agreement was entered into on or before February 2, 2002. Because these findings of fact are not clearly erroneous, the court will accept and adopt them for the purposes of this review.

That leaves us with the purely legal question of whether Judge Bechtle's determination that the Settlement Agreement and Amendment No. 4 were not entitled to protection under Pennsylvania's statutory mediation privilege, 42 Pa.C.S.A. § 5949, was correct under the facts as found and adopted by this court. That statute provides as follows:

> (a) General rule—Except as provided in subsection (b), all mediation communications and mediation documents are privileged. Disclosure of mediation communications and mediation documents may not be required or compelled through discovery or any other process. Mediation communications and mediation documents shall not be admissible as evidence in any action or proceeding, including, but not limited to, a judicial, administrative or arbitration proceeding.

"Mediation" is "[t]he deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute." 42 Pa.C.S.A. § 5949(c). A "mediation communication" is any communication, verbal, nonverbal, oral or written, that is "made by, between or among a party, mediator, mediation program or any other person present to further the mediation process when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program." *Id.* A mediation document con-

sists of "written material, including copies, prepared for the purpose of, in the course of or pursuant to mediation." *Id.* Subsection (b)(4) of the statute excludes from the privilege "[a]ny document which otherwise exists, or existed independent of the mediation and is not otherwise covered by this section." A settlement document, to the extent that it is introduced to enforce the settlement embodied by it, is also exempted from the privilege. 42 Pa.C.S.A. § 5949(b)(1).

■ Given this statutory language, which circumscribes the breadth of the mediation. privilege, we agree with Judge Bechtle's conclusion that neither the declaration of Bennett D. Greenberg, Esq. nor that of Professor Eric Green, the mediator, control the determination. Mr. Greenburg unduly conflates the concepts of "settlement" as between parties and "mediation" as defined by the statute. He states that Mr. Green "... encouraged the parties to continue the mediation process and discussions prior to meeting with him again." (Greenberg Dec. ¶ 9). It seems to us that the mediation process requires the presence, or at least the active participation, of a mediator. The statute refers to "mediation communication and mediation documents" and this language implies actual communication by the parties to the mediator and from the mediator to the parties. Otherwise, we would be hard pressed to distinguish between garden variety settlement discussions, which are not protected, and those which are a part of the mediation process and are privileged.

■ Nor does Mr. Greenberg's assertion that he spoke to Mr. Green on at least two occasions prior to the settlement being reached confer privileged status on communications and documents shared only by the parties and not involving the mediator. That is because, as we construe the statute, communications purely between the parties and not involving the active participation of the mediator are not privileged. Of course, Pennsylvania Rule of Evidence 408, relating to compromise and offers to compromise, may be applicable to protect settlement negotiations.

We also agree with Judge Bechtle that Professor Green's declaration describing his understanding of the scope of the privilege and the assurances about confidentiality that he customarily imparts to the parties does not bind the court. It is the statute, not Professor Green's practices or understandings, which governs the scope of the privilege. His declaration does not indicate that he had any significant involvement in helping to reach the ultimate terms and structure of the settlement reached by the parties. Instead, his declaration confirms the limited nature of his involvement after the November 20, 2000 failed mediation attempt. We might have quite a different view had the evidence indicated that the parties and Mr. Green explicitly agreed upon a mediation process which contemplated one face to face meeting on November 20th and a number of followup sessions by telephone. There is nothing in the evidence to support the existence of such an agreement.

■ We follow the general rule that the party asserting a privilege has the burden of establishing it and that it must be strictly construed. Based upon the language of the statute and what little case law there is on the subject, we conclude that discussions among parties outside the presence of the mediator and not occurring at a mediation proceeding are not privileged. Where the mediator has no direct involvement in the discussions and where the discussions were not designated by the parties to be a part of an ongoing mediation process, the rationale underlying the mediation privilege (i.e., that confidentiality will make the mediation more effective) is not implicated. The mere fact that discussions subsequent to a mediation relate to the same subject as the mediation does not mean that all documents and communications related to that subject are "to further the mediation process" or prepared for the purpose of, in the course of, or pursuant to mediation.

Because there are no Pennsylvania cases directly on point we look to federal case law construing the federal mediation privilege for guidance. In *Folb v. Motion Picture Indus. Pension & Health Plans,* 16 F.Supp.2d 1164, 1180 (C.D.Cal.1998), the court held that holding settlement discussions and exchanging related documents were not protected by the

federal mediation privilege simply because they occurred, or were created, following a mediation. In *Folb*, the plaintiff moved to compel the production of a mediation brief, as well as correspondence and notes to the files regarding settlement negotiations that followed the mediation. *Id.* at 1167. The brief was prepared prior to the formal mediation session and forwarded to opposing counsel and the mediator. The court held that the brief was privileged, the same conclusion we would reach under the Pennsylvania statute. However, the court held that the settlement materials were not privileged:

> [S]ubsequent negotiations between the parties ... are not protected even if they include information initially disclosed in the mediation. A contrary rule would permit a party to claim the privilege with respect to any settlement negotiations so long as the communications took place following an attempt to mediate the dispute. *Id.* at 1180.

We do not think that our construction of the statute is at odds with its salutary purpose of protecting those disclosures by a party to a mediator in order to bring about specific suggestions or guidance from the mediator as to an ultimate resolution of the issues before the mediator. As Judge Bechtle suggests in his Report, included in the "core" of these materials are documents such as mediation position papers and specific information prepared for mediation sessions. Also included are other documents created by, and communications between the parties in preparation for the mediation sessions. We believe that documents created subsequent to the mediation process may be protected by the privilege to the extent that they have a clear nexus to the mediation. These would include drafts of settlement proposals agreed upon at mediation.

However, under the facts of the instant case, plaintiffs have failed to establish any nexus between the subsequently created documents and the mediation process. The documents in question cannot be tied to the November 20th mediation or to any subsequent activity by the mediator. There is no evidence of any sort of approval of the mediator or suggestions by him as to how to resolve disputed points in the ongoing exchange of settlement proposals following his initial involvement.

As Judge Bechtle put it in his Report, we interpret "the language of Pennsylvania's mediation privilege as extending its protection to mediator-brokered settlements, but not to settlements that were simply reached following a mediation. Thus, there must be a sufficient nexus between the mediator's involvement with the parties and the settlement reached by the parties. That nexus has not been established with regard to the Settlement Agreement and Amendment No. 4." (Report at 18). We also echo Judge Bechtle's observation that: "[t]he statute contemplates 'the deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute.' The evidence presented fails to establish that the Settlement Agreement or Amendment No. 4 proximately resulted from the use of the mediator to reach a resolution of the insurance dispute." (Report at 19).

In accordance with the foregoing, Defendants' and counter-plaintiffs' appeal from the special discovery master's Final Ruling No. 1 (Doc. No. 63) is DENIED.