Commonwealth of Pennsylvania, : 
Office of Attorney General :
 :
     v. : No. 904 C.D. 2023
 :
The Baroness Consulting and : Argued: April 8, 2025
Mediation, LLC and Juliane :
Von Schmeling, :
          Appellants :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE STACY WALLACE, Judge
             HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                 FILED: May 19, 2025

      On August 28, 2020, the Commonwealth of Pennsylvania, by the Office of Attorney General (OAG) (together, the Commonwealth), instituted an equity suit against The Baroness Consulting and Mediation, LLC (Baroness), and Juliane Von Schmeling (Von Schmeling) (together, Appellants), in which the Commonwealth alleged that Appellants engaged in the unauthorized practice of law[1] and thereby violated the Unfair Trade Practices and Consumer Protection Law (CPL)[2] in multiple respects.

      Appellants appeal[3] from the May 25, 2023 order of the Court of Common Pleas of Luzerne County (trial court), which, in pertinent part, directed Appellants to produce certain records previously withheld by them pursuant to Section 5949(a) of

---

[1] 42 Pa.C.S. § 2524(a).

[2] Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1 – 201-10.

[3] Appellants originally appealed to the Pennsylvania Superior Court, which transferred the case to this Court on August 21, 2023.

the Judicial Code, 42 Pa.C.S. § 5949(a), typically referred to as the "Mediation Privilege" (Mediation Privilege or Privilege). Appellants contend that the trial court erred in ordering the production of the documents, which they argue remain shielded from discovery.

Upon review, we affirm in part, vacate in part, and remand for further proceedings.

## I.     Facts and Procedural History

The facts pertinent to our disposition of this appeal are taken from the Commonwealth's complaint and the trial court record. Von Schmeling is not a licensed attorney in Pennsylvania and did not graduate from a law school accredited by the American Bar Association. Until sometime in 2015, Von Schmeling marketed mediation services through her company, The Baroness-Family Law Consulting, LLC. In September 2015, Von Schmeling received a letter from the OAG warning her to cease and desist from continuing any business practices that constituted the unauthorized practice of law. Von Schmeling continued to offer services through another company, Baroness. The OAG alleges that Von Schmeling, through her companies, in fact provided legal services and legal advice for an hourly fee and has published advertisements offering services related to divorce, custody, child advocacy, employment issues, pre- and post-nuptial agreements, co-parenting, and estate planning.

In August 2020, the Commonwealth filed its civil suit against Appellants in the trial court based on complaints it was receiving from Appellants' former customers that Von Schmeling was practicing law without a license. The Commonwealth brought claims for violation of the CPL and Section 2524 of the Judicial Code, which criminalizes the unauthorized practice of law, authorizes civil

2

suits to enjoin such practice, and provides that a violation also constitutes a violation of the CPL. *See* 42 Pa.C.S. § 2524(a), (c).

On November 25, 2020, the Commonwealth propounded on Appellants requests for the production of documents (RFPs), in which they sought several categories of Appellants' business records. Three of those categories are at issue in this appeal:

> D. A complete copy for each consumer's file which [Appellants] provided divorce, custody, support, property settlement agreements, etc. services for. For each consumer, provide any and all documents including, but not limited to, intake and interview forms, notes, engagement letters or retainer agreements, pleadings, petitions, complaints, motions, stipulations, proposed orders, correspondences, invoices, receipts, and other communications which [Appellants] prepared, drafted, or assisted with, or on behalf of consumers in the Commonwealth of Pennsylvania [(Request D)].
>
> . . . .
>
> H. Copies of any and all documents, including but not limited to agreements, stipulations, pleadings, petitions, motions, applications, forms, deeds, estate tax returns etc., in which [Appellants] assisted with, or prepared and/or drafted on behalf of consumers **which have been filed with a Pennsylvania court or any other adjudicative body within the Commonwealth of Pennsylvania** [(Request H)].
>
> . . . .
>
> N. True and correct copies of your complete file for the customers listed below, and any and all documents including, but not limited to, correspondences, receipts, invoices, billing records, retainer agreements, any and all documents, notes[,] memorandums, pleadings, drafted by [Appellants] pertaining to the following consumers:

3

1. Jennifer Bulkley
2. Jamie Kozemko
3. Michelle Davies
4. Marie Prizniak
5. Stacy Cresci
6. Jaye Lamoreaux
7. Marita Carey
8. Kurt Topfer
9. Lisa Bromage
10. Rise Brantley (Estate of John B. Brantley)
11. Cynthia Gebhardt
12. Rose Ann Garrahan-Bardzel [(Request N)]

(Reproduced Record (R.R.) at 00095a-97a) (emphasis added).

Appellants served answers and objections to the RFPs on February 9, 2021. Appellants therein objected to Requests D, H, and N,[4] in pertinent part, on the ground that the requested documents were protected by the Mediation Privilege. The Commonwealth responded by filing motions to strike Appellants' objections and to compel production of the requested documents in full. Appellants in turn filed a motion for a protective order and a privilege log detailing the documents withheld pursuant to the Mediation Privilege. The trial court heard consolidated argument on the two motions in October 2021, after which it granted the Commonwealth's motion to compel, denied Appellants' motion for protective order, and directed Appellants to provide "full and complete responses" to Requests D, H, and N, along with a privilege log identifying any withheld documents. (R.R. at 203a-05a.)

In July 2022, Appellants submitted an amended privilege log, which identified approximately 4,000 pages of documents allegedly protected by the Mediation Privilege. The Commonwealth filed a motion for *in camera* review, which ultimately was heard in May 2023 by Senior Judge Charles Saylor of the

---

[4] Although Appellants also objected to other portions of the RFPs, those objections are not at issue in this appeal.

4

Northumberland County Court of Common Pleas.[5]  On May 25, 2023, the trial court denied the Commonwealth's motion for *in camera* review and dispensed with the need for an evidentiary hearing.  Instead, the trial court concluded that the entries in Appellants' amended privilege log were detailed enough to permit individual rulings on each item as to whether it was protected by the Mediation Privilege.  The trial court marked each of the items to indicate those that were privileged, those that were not, and those that fell under the exceptions to the Mediation Privilege set forth in 42 Pa.C.S. § 5949(b).  The trial court placed a checkmark next to documents to which the privileged attached, a notation of "Not P" next to documents to which the privilege did not apply at all because they did not "fall within the statutory time frame of a mediation or did not fit the definition of 'mediation communication,'" and a notation of "(b)(4)" next to the documents that fell under an exception (documents that exist independent of the mediation).  (Trial Ct. Op. at 3) (unpaginated); (Trial Ct. Order, 5/25/2023, Ex. 1).[6]

Appellants appealed first to Pennsylvania Superior Court, which transferred the case to this Court on August 21, 2023.[7]

---

[5] In the interim, the original judge assigned to the matter, Judge Polachek Gartley, together with the rest of the trial court judges in Luzerne County, recused themselves from the case.  Senior Judge Saylor thereafter was assigned.

[6] By order dated July 21, 2023, the trial court clarified that it intended by its May 25, 2023 order to direct production of the non-privileged records identified in the amended privilege log, but given the pendency of the appeal, no deadline could be established.

[7] On November 20, 2024, we ordered that this appeal be argued.  We further directed the parties to file supplemental briefs addressing whether and when the Mediation Privilege protects settlement documents and whether and by whom the Mediation Privilege may be waived. The parties complied on March 24 and 25, 2025.  Nevertheless, given our disposition and the fact that the trial court did not address or create a record on the issue of waiver, we need not and do not address it here. **(Footnote continued on next page…)**

## II. Issues

There are two issues in this appeal: (1) whether the trial court's May 25, 2023 order is an appealable collateral order pursuant to Pa.R.A.P. 313;[8] and (2) whether the trial court erred in ordering the production of five specific categories of documents as not shielded from discovery by the Mediation Privilege.

## III. Discussion

### A. Collateral Order Doctrine[9]

Because the question goes to our jurisdiction over this appeal, we first must determine whether the trial court's May 25, 2023 order is appealable.

Generally, this Court's appellate jurisdiction extends only to the review of final orders. *Rae v. Pennsylvania Funeral Directors Association*, 977 A.2d 1121, 1124 (Pa. 2009). *See also* Pa.R.A.P. 341(a). A final order is one that disposes of all claims against all parties or is entered as a final order pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 341(c). Pa.R.A.P. 341(b). Discovery orders typically are not final orders and must await final judgment for review. *Smith v. Philadelphia Gas Works*, 740 A.2d 1200, 1203 (Pa. Cmwlth. 1999). Nevertheless, pursuant to the "collateral order doctrine," certain interlocutory orders may be appealable and reviewable if they meet the three-part test set forth in Pa.R.A.P. 313(b). Thereunder,

---

On remand, nothing precludes the OAG from asserting, or trial court from considering, waiver of the Privilege which, if applicable, would render discoverable any otherwise protected documents.

[8] By Order exited January 29, 2024, we directed the parties to address in their principal briefs the question of whether the trial court's May 25, 2023 order constitutes an appealable, collateral order pursuant to Pa.R.A.P. 313. Appellants complied with our Order and briefed the question. The Commonwealth did not.

[9] Whether an order is an appealable collateral order is a question of law subject to a *de novo* standard of review and plenary scope of review. *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018).

6

to be an appealable collateral order, (1) the order must be "an order separable from and collateral to the main cause of action" (separability); (2) "the right involved must be too important to be denied review" (importance); and (3) "the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost" (irreparable loss). Pa.R.A.P. 313(b); *see also Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 364 (Pa. 2021). The collateral order doctrine is construed narrowly, and each prong must be satisfied before an otherwise interlocutory order will be reviewed on appeal. *Sylvan Heights Realty Partners, L.L.C. v. LaGrotta*, 940 A.2d 585, 587 (Pa. Cmwlth. 2008).

In the seminal case of *Ben v. Schwartz*, 729 A.2d 547 (Pa. 1999), our Supreme Court concluded that a discovery order compelling production of an agency's investigative files concerning complaints against a dentist was an appealable collateral order. The Court in *Ben* noted that, with regard to such records, "the disclosure of documents cannot be undone. . . . [T]here is no effective means of reviewing after final judgment an order requiring the production of putatively protected material." *Id.* at 552. Following *Ben*, our Supreme Court has reaffirmed in multiple cases that discovery orders compelling the production of purportedly privileged information or documents are immediately appealable as collateral orders. *See, e.g.*, *In re Estate of McAleer*, 248 A.3d 416 (Pa. 2021) (attorney-client privilege); *Commonwealth v. Williams*, 86 A.3d 771 (Pa. 2014) (work product); *Commonwealth v. Harris*, 32 A.3d 243, 251 (Pa. 2011) ("We reaffirm our holding in *Ben* . . . that orders overruling claims of privilege and requiring disclosure are immediately appealable under [Rule] 313."). *See also Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 472 (Pa. Cmwlth. 2018) (orders purportedly directing disclosure of allegedly privileged documents are immediately appealable as collateral orders pursuant to Rule 313). *Compare K.H. v.*

7

*Department of Human Services*, 315 A.3d 178, 184-85 (Pa. Cmwlth. 2024) (discovery orders that *preclude* discovery of arguably privileged or protected material are not immediately appealable as collateral orders).

Here, the trial court's order, in part, directed the production of documents and information identified in Appellants' privilege log as protected by the Mediation Privilege. Under the above precedent, we see no reason why the collateral order doctrine would not apply in this case. If review of the trial court's order was delayed until after the entry of final judgment, the bell cannot be unrung and any review of the issue would, at that point, be futile. We accordingly conclude that the trial court's May 25, 2023 order is an appealable collateral order, and we will proceed to consider Appellants' issues on the merits.

### B. Application of the Mediation Privilege[10]

Section 5949(a)-(c) provides, in pertinent part, as follows:

**(a) General rule.--**Except as provided in subsection (b), all mediation communications and mediation documents are privileged. Disclosure of mediation communications and mediation documents may not be required or compelled through discovery or any other process. Mediation communications and mediation documents shall not be admissible as evidence in any action or proceeding, including, but not limited to, a judicial, administrative or arbitration action or proceeding.

**(b) Exceptions.--**

. . . .

---

[10] Discovery orders typically are subject to an abuse of discretion standard of review. *MarkWest Liberty Midstream & Resources, LLC v. Clean Air Council*, 71 A.3d 337, 342 (Pa. Cmwlth. 2013). However, the applicability of an evidentiary privilege is a question of law, over which our standard of review is *de novo* and our scope of review is plenary. *Township of Neshannock*, 181 A.3d at 471 n.3.

(4) Any document which otherwise exists, or existed independent of the mediation and is not otherwise covered by this section, is not subject to this privilege.

**(c) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Mediation."** The deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute. For purposes of this section, mediation commences at the time of initial contact with a mediator or mediation program.

**"Mediation communication."** A communication, verbal or nonverbal, oral or written, made by, between or among a party, mediator, mediation program or any other person present to further the mediation process when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program.

**"Mediation document."** Written material, including copies, prepared for the purpose of, in the course of or pursuant to mediation. The term includes, but is not limited to, memoranda, notes, files, records and work product of a mediator, mediation program or party.

. . . .

**"Settlement document."** A written agreement signed by the parties to the agreement.

42 Pa.C.S. § 5949(a)-(c). *See also* Pa.R.Civ.P. 4011(d) (prohibiting discovery of mediation communications and mediation documents set forth in 42 Pa.C.S. § 5949). The purpose of the Mediation Privilege has been cogently described by federal courts interpreting its reach:

> If participants cannot rely on the confidential treatment of everything that transpires during mediation sessions[,] then counsel of necessity will feel constrained to conduct themselves in a cautious, tightlipped, non[]committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of

a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements, thereby expediting cases at a time when judicial resources are sorely taxed.

*Sheldone v. Pennsylvania Turnpike Commission*, 104 F. Supp. 2d 511, 513 (W.D. Pa. 2000) (quoting *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979)) (emphasis and editing removed). Further,

> [h]aving no coercive power, a mediator is dependent upon increasing communication, if not trust, between disputants. The willingness of mediation parties to "open up" is essential to the success of the process.
>
> The mediation process is purposefully informal to encourage a broad ranging discussion of facts, feelings, issues, underlying interests and possible solutions to the parties' conflict. Mediation's private setting invites parties to speak openly, with complete candor. In addition, mediators often hold private meetings—"caucuses"—with each of the parties. More overt assurances of confidentiality are common. Mediators regularly require all present to promise to keep mediation discussions confidential, and routinely assure participants that the proceedings are confidential (whether or not legal protection is certain).
>
> Under such circumstances, mediation parties often reveal personal and business secrets, share deep-seated feelings about others, and make admissions of fact and law. Without adequate legal protection, a party's candor in mediation might well be "rewarded" by a discovery request or the revelation of mediation information at trial. A principal purpose of the mediation privilege is to provide mediation parties protection against these downside risks of a failed mediation. Participation will diminish if perceptions of confidentiality are not matched by reality. Another critical purpose of the privilege is to maintain the public's perception that individual mediators and the mediation process are neutral and unbiased.

10

*Dietz & Watson, Inc. v. Liberty Mutual Insurance Co.* (U.S. Dist., E.D. Pa, No. 14-4082, filed January 28, 2015), 2015 WL 356949, at \*2 (quoting Alan Kirtley, The Mediation Privilege's Transition from Theory to Implementation: Designing a Mediation Privilege Standard to Protect Mediation Participants, The Process and The Public Interest, 1995 J. Disp. Resol. 1, 8-10 (1995)).

Nevertheless, in Pennsylvania, evidentiary privileges are not favored and are strictly construed, and their utilization should be permitted by courts only to the extent that excluding relevant evidence has a public good that transcends the typically predominant principle that courts ought to employ all rational means for ascertaining the truth. *BouSamra v. Excela Health*, 210 A.3d 967, 975 (Pa. 2019); *Commonwealth v. Spetzer*, 813 A.2d 707, 717 (Pa. 2002). The party who asserts a privilege's application has the initial burden to prove that the privilege is properly invoked. *Township of Neshannock*, 181 A.3d at 474. Then, the party who seeks to overcome the privilege has the burden to establish an exception to its application. *Id.* (citation omitted). To carry the initial burden, the party asserting the privilege must show, "by record evidence such as affidavits, sufficient facts as to bring the communications at issue within the narrow confines of the privilege." *Id.* (citation, quotations, and editing removed).

Here, Appellants challenge the trial court's order directing the production of five specific categories of documents under Requests D, H, and N: (1) settlement documents; (2) financial records of the parties submitted in the course of mediation; (3) Appellants' billing records; (4) the identity of mediation parties; and (5) pleadings drafted for mediation participants.[11]

---

[11] Appellants include in their brief the Bates ranges for each category of documents they challenge on appeal. *See* Appellants' Br. at 7 n.7.

11

Before we address the specific categories of documents identified by Appellants, we first address the Commonwealth's broader argument that *none* of the documents withheld by Appellants are subject to the Mediation Privilege because Appellants were not, in fact, conducting mediations as defined in Section 5949(c). (Commonwealth Br. at 17-24.) *See also* 42 Pa.C.S. § 5949(c) (defining "mediation" as "[t]he deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute"). The Commonwealth argues that Appellants were, instead, unlawfully practicing law and rendering legal advice. This fact, according to the Commonwealth, takes all of the disputed records out of the ambit of the privilege's application because the documents no longer or never were prepared or made "to further the mediation process" or "for the purpose of, in the course of[,] or pursuant to" mediation. *See id.* (defining "mediation communications" and "mediation documents," respectively).

Although we agree with the Commonwealth that, *if* Appellants were not in fact conducting mediations but, rather, were unlawfully practicing law, none of the documents, records, or communications associated with such law practice would be protected by the Mediation Privilege. The problem with this argument is that the nature of Appellants' business is the very issue in the underlying lawsuit, which has not been decided. Given the fact that this question remains outstanding, and given that the statute does not include a blanket exception to the privilege for certain kinds of legal proceedings, we cannot, in reviewing a trial court discovery order, make this determination in the first instance. *See Dietz & Watson, Inc.*, 2015 WL 356949, at *4-*6 (in insurance bad faith action alleging bad faith settlement negotiations, documents otherwise protected by the Mediation Privilege were not subject to disclosure merely to further the policy interest of inhibiting insurance companies from engaging in bad

12

faith negotiations; nor were documents subject to privilege merely to encourage candid discussion by insurers in settlement discussions; court would not "ignore the language of the statute and weigh and choose between the parties' competing policy arguments" where Section 5949(a) clearly prohibited introduction of privileged documents in "any" proceeding, with limited exceptions that did not include bad faith actions).[12]

We therefore will proceed to consider the application of the privilege to the several categories of documents identified by Appellants.

### 1.    Settlement Documents[13]

Appellants first contend that settlement agreements drafted in or pursuant to mediation proceedings expressly are covered by the terms of Section 5949(a), as evidenced in part by the exception contained in Section 5949(b)(1), which permits the disclosure of "settlement documents" only in the limited circumstance where the enforceability of the document is at issue. (Appellants' Br. at 19-20.) *See* 42 Pa.C.S. § 5949(b)(1); *see also id.* § 5949(c) (defining "[s]ettlement documents" as "written agreement[s] signed by the parties to the agreement[s]"). Appellants further argue that such settlement agreements contain communications made to the mediator during the mediation and also constitute the mediator's work product, both of which are expressly protected by the Mediation Privilege as "mediation communications" and "mediation

---

[12] Importantly, we note that Pennsylvania is not 1 of the 13 states that has enacted the Uniform Mediation Act. Pertinent here, Section 6(a)(5) of the Uniform Mediation Act exempts from the Privilege's protection mediation communications that are "sought or offered to prove or disprove a claim or complaint of professional misconduct or malpractice filed against a mediator[.]" Uniform Mediation Act § 6(a)(5) (amended 2003), *available at* https://www.uniformlaws.org/committees/community-home?CommunityKey=45565a5f-0c57-4bba-bbab-fc7de9a59110 (last visited May 19, 2025).

[13] The settlement documents at issue are included in the trial court's notated privilege log at Bates nos. 30-57, 58-70, 157-83, and 379-84. *See* Trial Court Order, 5/25/23, Ex. 1; Appellants' Br. at 7 n.7.

documents." The Commonwealth responds, once again, that any agreements drafted by Appellants that went beyond mediation into the realm of legal practice are not protected because the drafting of those documents, by definition, is restricted to lawyers. The trial court agreed on this point, concluding that the Mediation Privilege cannot operate to shield illegal activity and analogizing to the crime-fraud exception to the attorney-client privilege. (Trial Ct. Op. at 5-6.)

First, and beginning where we ought with the statute itself, it is clear that "settlement documents" clearly are intended to be privileged unless they are being introduced in an action where their enforceability is at issue. 42 Pa.C.S. § 5949(b)(1). The statute also contemplates that such agreements will be drafted in the course of mediation and will be signed by the parties, presumably with the intent that they be enforceable. *Id.* § 5949(c). These documents therefore have legal import, and the mere drafting of them does not necessarily constitute the practice of law. Indeed, *pro se* parties in business and myriad other contexts successfully draft legally binding documents without the help of lawyers. We therefore disagree with the Commonwealth that settlement agreements that might contain legally enforceable terms regarding the matters before the mediator are necessarily exempted from the privilege's reach.

Second, other courts have concluded, we think correctly, that settlement agreements and written settlement proposals that are drafted and/or exchanged during mediation or at another time but which still have a sufficient nexus to the participation of the mediator are privileged. For example, in *United States Fidelity & Guaranty Company v. Dick Corporation/Barton Marlow*, 215 F.R.D. 503 (W.D. Pa. May 28, 2003), the court held that settlement agreements and proposals drafted during the

14

course of, and even after, mediation may be protected under the privilege, but only if those documents bear a sufficient nexus to the participation of the mediator:

> [D]iscussions among parties outside the presence of the mediator and not occurring at a mediation proceeding are not privileged. Where the mediator has no direct involvement in the discussions and where the discussions were not designated by the parties to be a part of an ongoing mediation process, the rationale underlying the mediation privilege ([*i.e.*], that confidentiality will make the mediation more effective) is not implicated. The mere fact that discussions subsequent to a mediation relate to the same subject as the mediation does not mean that all documents and communications related to that subject are "to further the mediation process" or prepared for the purpose of, in the course of, or pursuant to mediation.
>
> . . . .
>
> We do not think that our construction of the statute is at odds with its salutary purpose of protecting those disclosures by a party to a mediator in order to bring about specific suggestions or guidance from the mediator as to an ultimate resolution of the issues before the mediator. . . . [I]ncluded in the "core" of these materials are documents such as mediation position papers and specific information prepared for mediation sessions. Also included are other documents created by, and communications between the parties in preparation for[,] the mediation sessions. We believe that documents created subsequent to the mediation process may be protected by the privilege to the extent that they have a clear nexus to the mediation. These would include drafts of settlement proposals agreed upon at mediation.
>
> . . . .
>
> [W]e interpret the language of Pennsylvania's [M]ediation [P]rivilege as extending its protection to mediator-brokered settlements, but not to settlements that were simply reached following a mediation. Thus, there must be a sufficient nexus between the mediator's involvement with the parties and the settlement reached by the parties.

15

*Id.* at 506-07 (some internal quotations omitted). *See also id.* at 506 ("It seems to us that the mediation process requires the presence, or at least the active participation, of a mediator. The statute refers to 'mediation communication and mediation documents[,]' and this language implies actual communication by the parties to the mediator and from the mediator to the parties. . . . [A]s we construe the statute, communications purely between the parties and not involving the active participation of the mediator are not privileged."). The court in *U.S. Fidelity* ultimately concluded that the settlement agreement at issue, drafted after the conclusion of the mediation and without the involvement of the mediator, did not bear a significant enough nexus to the mediation to invoke the protection of the Mediation Privilege. *Id.*

In *Dietz & Watson, Inc.*, the plaintiff filed a bad faith action against its liability insurer arguing that the insurer failed to engage in good faith settlement negotiations in the underlying personal injury suit by unreasonably refusing to contribute sufficient funds to settle the injury claim. The federal district court considered whether the Mediation Privilege applied to shield from discovery certain mediation documents withheld pursuant to the Mediation Privilege. 2015 WL 356949, at *1-*2. In concluding that certain disputed documents were protected by the Mediation Privilege, the district court rejected the plaintiff's argument that the Mediation Privilege should not apply at all in an action asserting an insurer's bad faith conduct during settlement negotiations. The district court instead concluded that the withheld settlement documents were protected by the Privilege but only to the extent that they were created with the involvement of the mediator or as part of an ongoing mediation process. *Id. See also U.S. Fidelity & Guarantee Co. v. Bilt-Rite Contractors, Inc.* (U.S. Dist., E.D. Pa., No. Civ.A.04-1505, filed May 16, 2005), 2005 WL 1168374, at *6 (written claim evaluation prepared by parties to mediation at the

16

request of the mediator for purposes of making settlement offers protected by the mediation privilege).

The standard developed by the above federal cases is consistent with the language of Section 5949 and the policy underlying the Mediation Privilege. We therefore conclude that only those settlement documents that are created in the presence, or with the assistance, of a mediator, or as part of an ongoing mediation process involving the mediator's facilitation, are shielded from discovery; in other words, the documents must have a sufficiently established "nexus" to a mediation process involving a mediator to be protected. Other settlement documents and communications without such a nexus, although perhaps protected by other doctrines, privileges, or rules, are not protected under this Privilege.

Here, the trial court categorically concluded that settlement agreements and drafts thereof were not privileged because protecting settlement agreements and their contents from disclosure would, in this context, "shield improper and unlawful activity." (Trial Ct. Op. at 6) (unpaginated). Without any analysis with regard to the settlement documents at issue, their contents, and their "nexus" to the mediation itself, we cannot determine whether the trial court erred in this respect. We accordingly will vacate this limited portion of the trial court's order and remand for further analysis and, if necessary, *in camera* review by the trial court.

## 2. Financial Records of the Parties[14]

Next, Appellants contend that the trial court erred in ordering disclosure of the financial records of parties provided during mediation, which include real estate appraisals and related records. The trial court concluded that these documents fell within the exception in Section 5949(b)(4), which excludes any documents that exist

_____

[14] The challenged financial documents are designated as Bates nos. 84-97, 145-48, 184-87, 395, 401-04, 426, and 4850-5492. *See* Trial Court Order, 5/25/23, Ex. 1; Appellants' Br. at 7 n.7.

17

or existed independently of the mediation. (Trial Ct. Op. at 5) (unpaginated) (citing, in part, *Commonwealth v. Kunkle*, 79 A.3d 1173, 1189 (Pa. Super. 2013) (documents or materials that existed prior to or independently of the mediation, even though discussed or introduced at the mediation, are not subject to the privilege)).

We agree with the trial court, although on slightly different grounds. First, these documents would not, on their face, qualify as "mediation documents" at all unless they were "prepared for the purpose of, in the course of[,] or pursuant to[,] mediation." 42 Pa.C.S. § 5949(c). To the extent that any of the financial records were prepared for any other purpose or prior to a mediation, they are not mediation documents and are not protected by the Privilege on their face. Second, even to the extent that these financial records are "mediation documents," they nevertheless exist independent of the mediation. Banks, appraisers, actuaries, financial advisers, and other such individuals and entities would have created or housed these records, and, therefore, they exist independent of the mediation. Thus, because Appellants did not carry their burden to establish the applicability of the Mediation Privilege to all of these documents and because, in any event, the Commonwealth established the applicability of an exception, we conclude that the trial court did not err in directing their production. *See also Stewart Title Guarantee Co. v. Owlett & Lewis, P.C.*, 297 F.R.D. 232, 238-39 (M.D. Pa. July 18, 2013) (expert report prepared 16 months prior to mediation but submitted as an attachment to a mediation memo to the mediator was not privileged because it existed independent of the mediation).

### 3. Appellants' Billing Records[15]

The trial court concluded that Appellants' billing records, including time logs, bill sheets, payment receipts, and cancelled checks are not protected by the Mediation Privilege because they are not relevant to the mediation. Relying on *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 372 (Pa. 2013), in which the Supreme Court concluded that vouchers and invoices related to the payment for legal services were not protected by the attorney-client privilege, the trial court concluded that these financial documents in no way disclose confidential communications from the mediation. (Trial Ct. Op. at 4-5) (unpaginated). We agree and conclude that Appellants' financial records relating to charges billed to mediation participants clearly are not mediation communications and were not created for or during the mediation. They accordingly are not protected.

### 4. The Identity of the Parties in Mediation[16]

The trial court concluded that the identity of mediation parties is not a mediation document or communication and analogized to our attorney-client privilege cases indicating the names of clients are not protected by the privilege. (Trial Ct. Op. at 4 (unpaginated) (citing *Levy*, 65 A.3d at 370)). We agree. The identities of the parties who participated in mediations with Appellants are not communications or documents and clearly are not protected by the Mediation Privilege.

---

[15] The challenged billing records are designated as Bates nos. 7-10, 132-33, 188-93, 196-201, 211-12, 226, 269-74, 353-56, 361-62, 443-44. *See* Trial Court Order, 5/25/23, Ex. 1; Appellants' Br. at 7 n.7.

[16] Appellants indicate that the challenged names are those of the parties identified in "File#100-119." (Appellants' Br. at 7 n.7.)

### 5.     Pleadings Drafted for Mediation Participants[17]

Appellants lastly challenge the trial court's order to the extent that it directed the production of pleadings and other court documents drafted by Appellants for mediation participants.  First, and most obviously, any documents prepared for or during mediation that subsequently were produced or filed in any legal proceeding are not subject to the Mediation Privilege because they were made public in court proceedings.  Second, even to the extent not produced or filed in court, any court documents drafted by a mediator during mediation cannot be considered "mediation documents" because they do not serve the purpose of the mediation.  Rather, they are drafted specifically for parties to consider filing.  This is particularly so after an agreement has been reached by the parties.  Legal pleadings and forms filled out in whole or in part by a mediator, whether before or after an agreement has been reached by the parties, cannot constitute "mediation documents" because they are not prepared for the purpose of, in the course of, or pursuant to mediation.  They are drafted for the purpose of rendering legal advice or suggesting particular legal action.

### IV.     Conclusion

The trial court did not err or abuse its discretion in directing disclosure of all categories of documents identified by Appellants in this appeal, with the exception of documents identified as settlement documents. We accordingly affirm the trial court in all respects, except with regard to its rulings regarding such settlement documents. With regard to those documents, we vacate the trial court's order and remand for a

---

[17] The challenged pleadings are designated as Bates nos. 13-18, 21-75 (30-70 also identified by Appellants as privileged settlement documents), 119-29, 138, 145-48 (also identified by Appellants as privileged financial records), 157-87 (157-83 also identified by Appellants as privileged settlement documents; 184-87 also identified by Appellants as privileged financial records), 202-07, 219-25, 255-60, 275-328, 343-52, 392-94, 396-400, 425, 427-28. *See* Trial Court Order, 5/25/23, Ex. 1; Appellants' Br. at 7 n.7.

ruling as to those documents' discoverability as analyzed in accordance with the principles outlined in this Opinion. The trial court may on remand, as necessary, reconsider its ruling on the Commonwealth's motion for *in camera* review in this limited respect.

                                _____

                                PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, : 
Office of Attorney General :
 :
 v. : No. 904 C.D. 2023
 :
The Baroness Consulting and :
Mediation, LLC and Juliane :
Von Schmeling, :
                  Appellants :

## ***ORDER***

AND NOW, this 19th day of May, 2025, the May 25, 2023 order of the Court of Common Pleas of Luzerne County is hereby AFFIRMED, in part, and VACATED, in part, as set forth in the foregoing Opinion. This matter is remanded to the trial court for further proceedings consistent with the foregoing Opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge