**[J-65-2024] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| PENNCREST SCHOOL DISTRICT, | : | No. 31 WAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered April |
| | : | 24, 2023, at No. 1463 CD 2021, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Crawford County |
| | : | entered December 16, 2021, at No. |
| THOMAS CAGLE, | : | AD 2021-486, and Remanding. |
| | : | |
| Appellant | : | ARGUED:  October 9, 2024 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                       **DECIDED:  AUGUST 19, 2025**

The Right-to-Know Law ("RTKL")[1] defines a "record" as

[i]nformation, regardless of physical form or characteristics, [(1)] that documents a transaction or activity of an agency and [(2)] that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency.  The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. §67.102.  We all agree this statute imposes "a two-part inquiry that applies equally to all forms of communication, including Facebook posts."  Majority Opinion at 21; *see also* Dissenting Opinion at 1 ("The Majority reaffirms that the RTKL's two-part inquiry is the only test to be utilized when determining whether disclosure of information is required under the statute.  With that, I agree.") (cleaned up).  But confoundingly, even though the majority and dissent reach very different conclusions about how the statutory test

---

[1] *See* 65 P.S. §§67.101-67.3104.

operates in this context, they seem to agree its language is unambiguous. *See* Majority Opinion at 21 ("These provisions[ are] unambiguous on their face"); Dissenting Opinion at 5 ("In addition to imposing a judicial gloss upon the statutory rubric, the Commonwealth Court's test is unnecessary. The statutory mandate suffices."). Considering the disparate views of my colleagues, the parties, and the tribunals below, I cannot agree. *See A.S. v. Pa. State Police*, 143 A.3d 896, 905-06 (Pa. 2016) ("A statute is ambiguous when there are at least two reasonable interpretations of the text."). On the contrary, this case calls the statute's ambiguity to full attention.

For context, in the RTKL request at issue, appellant Thomas Cagle sought "[a]ll Facebook posts and comments" by David Valesky and Luigi DeFrancesco, both members of the Penncrest School Board (Board), during a specified time period, "related to homosexuality and Penncrest School District [(District)], its officials, employees, or students, or its curriculum, physical re[s]ources, or electronic resources," including those they deleted or removed. RTKL Request at ¶¶3-6. Applying the two-part inquiry therefore requires us to determine: (1) whether such posts "document[]" an "activity of an agency"; and (2) whether they were "created . . . in connection with a[n] . . . activity of the agency." 65 P.S. §67.102. Below, the *en banc* Commonwealth Court majority focused much of its analysis on the phrase "of an agency." Understandably so, as the phrase appears in both parts of the statutory test (albeit the latter appearance refers back to "the" agency). Ultimately, it crafted a list of factors to help the courts, Office of Open Records (OOR), and open records officers determine whether social media activity is "of an agency." *See Penncrest Sch. Dist. v. Cagle*, 293 A.3d 783, 800-02 (Pa. Cmwlth. 2023) (*en banc*).

Today, this Court vaguely blesses "the consideration of certain factors that may be pertinent" when assessing "whether information satisfies the RTKL's two-part test." Majority Opinion at 23; *see id.* at 26 (concluding "the Commonwealth Court's decision . .

. articulates reasonable facts that warrant consideration when resolving whether a social media post constitutes an agency record"). Unfortunately, it provides little concrete guidance beyond that general endorsement, and it fails to appropriately scrutinize some of the individual factors discussed by the Commonwealth Court below. Most glaringly, the majority does not explain what the phrase "of an agency" actually means, either individually or when read in context with the other terms in Section 102's definition of "record." Because I believe it is ill-advised to adopt the Commonwealth Court's factors wholesale without answering these outstanding questions, I respectfully concur in part and dissent in part.

Primarily, this case requires us to consider whether Valesky's and DeFrancesco's alleged "activity," *i.e.*, posting on Facebook about homosexuality and the District, was "of an agency" or whether it was done in their capacity as private individuals. In other words, are their Facebook posts "of" the District, or are they "of" Valesky and DeFrancesco? The word "of" is a preposition that, in a broad sense, denotes some sort of relationship. It can serve a variety of functions, as demonstrated by its many dictionary definitions. *See, e.g.*, *Of*, Merriam-Webster.com Dictionary, *available at* https://www.merriam-webster.com/dictionary/of (defining "of" as, *inter alia*, "**2 a** used as a function word to indicate origin or derivation[;] **b** used as a function word to indicate the cause, motive, or reason[;] **c :** BY [*e.g.*,] plays **of** Shakespeare[;]" **d :** on the part of[;] **e :** occurring in[;]" "**5 a :** relating to **:** ABOUT[;]" "**6 a** used as a function word to indicate belonging or a possessive relationship[;]" **"9 a** used as a function word to indicate the object of an action denoted or implied by the preceding noun"); *Of*, Britannica Dictionary, *available at* https://www.britannica.com/dictionary/of (including "belonging to, relating to, or connected with (someone or something)[;]" "involving or dealing with (something)[;]" and "used to indicate the subject of an action").

For present purposes, it is enough to observe that common to all of these definitions, the word "of" connotes some sort of nexus. But the dilemma in cases like this one — where the line between personal and professional conduct is fuzzy, and it is difficult to discern whether an individual is acting on behalf "of an agency" — is determining how close that nexus must be. Does the RTKL require some official action formally endorsed by the agency? Or does **any** connection to the agency, no matter how tenuous, put a document within the RTKL's reach?

It seems to me the answer likely lies somewhere in the middle. On the one hand, the plain language of the provision does not require formal agency action or official ratification, and other provisions of the RTKL arguably suggest against such a reading.[2] *Cf. SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1044 n.19 (Pa. 2012) (applying "a reasonably broad perspective concerning what comprises transactions and activities of the agency"). By the same token, however, we cannot ignore that Section 102 uses the phrase "transaction or activity of an agency," **not** "transaction or activity of an agency member, employee, or official." It is plain that the "transaction or activity" in step (1) of the statutory test must be attributable to the agency itself, even if it is performed by an individual.[3] *Cf. Dental Benefit Providers, Inc. v. Eiseman*, 124 A.3d 1214, 1223 (Pa. 2015) ("albeit that the policy of liberal access is acknowledged, this Court also appreciates that

---

[2] For instance, Section 708 provides exceptions which exempt the record from disclosure. *See* 65 P.S. §67.708. One of those exceptions is for "[a] **record** that reflects[ t]he internal, predecisional deliberations of an agency, its **members, employees or officials** . . ., including . . . contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations." *Id.* at §67.708(b)(10)(i)(A) (emphasis added). This provision might suggest that, but for this statutory exception, internal, predecisional deliberations of individual "members, employees or officials" could constitute "records" under the definition in Section 102, even without binding action or vote by a quorum.

[3] Of course, the same can be said for the similar phrase "transaction, business or activity of the agency" in step (2) of the statutory test.

the General Assembly had tempered such policy with explicit limiting terms delineated in the [RTKL]").

Thus, the RTKL's definition of "record" must be construed liberally,[4] but not so far that the statutory language (namely, "of an agency") loses all meaning. I therefore reject Cagle's argument that "[t]he Facebook posts 'document[] . . . activity of' the District" **merely** "because they involve officials discussing District functions and operations." Cagle's Brief at 14 (text formatting omitted); *see also* Trial Court Opinion, 12/16/21, at 5 ("[T]he public needs to know if Board member Valesky thinks the library book display is evil and he intends to take action in his official capacity."). In my view, it is possible for agency employees to discuss aspects of their jobs in private, even in written form, without creating a "record" as defined under the RTKL.

For similar reasons, I respectfully disagree with the dissent's conclusion that the Commonwealth Court erred when it held "content was not determinative." Dissenting Opinion at 9. Although content is critical and might ultimately be the determinative factor in some (or even most) cases, context matters too. When we communicate, the meaning of our words is shaped by many factors, including the medium we use to convey them. So we cannot simply divorce content from its context; if we did, agency employees could end up unwittingly creating public records in all aspects of their lives.

---

[4] On this point, our law is clear. We have repeatedly explained "the objective of the RTKL 'is to empower citizens by affording them access to information concerning the activities of their government.'" *Levy v. Senate of Pa.*, 65 A.3d 361, 381 (Pa. 2013), *quoting SWB Yankees LLC*, 45 A.3d at 1042; *see also Pa. Interscholastic Athletic Ass'n, Inc. v. Campbell*, 310 A.3d 271, 281 (Pa. 2024) (quoting the same). In *Levy*, we explained the 2008 enactment of the RTKL "was a dramatic expansion of the public's access to government documents" from its predecessor legislation, it "demonstrate[d] a legislative purpose of expanded government transparency through public access to documents[,]" and "that courts should liberally construe the RTKL to effectuate its purpose of promoting access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions." *Levy*, 65 A.3d at 381 (internal quotations and citation omitted).

Consider Valesky's commentary here: "This is on display at Maplewood High School. Besides the point of being totally evil, this is not what we need to be teaching kids. They aren't at school to be brainwashed into thinking homosexuality is okay. Its [sic] actually being promoted to the point where it's even 'cool.'" Answer to Petition for Judicial Review, 10/27/21, at Ex. C. Imagine if, instead of posting this content on Facebook, Valesky sent a picture of the library display with this exact same comment in a text message to his spouse. Or imagine instead that he wrote it in his diary, with no intention for anyone else to ever see it. Under the dissent's rationale, which makes content king, both the text message and the diary page would be a "record" subject to disclosure simply because Valesky is a school board member discussing the school district. But as a matter of common sense, it is easy to see how those scenarios involve private activity rather than "activity of an agency[.]" 65 P.S. §67.102. Context matters.[5]

Moreover, the dissent simply concludes: "In discerning whether records qualify as records 'of' a particular agency, we consider the subject-matter of the records. It is the content of the record that matters. The statutory test is all that is needed to illuminate that content." Dissenting Opinion at 10 (internal quotation, footnote, and citation omitted).

---

[5] The dissent's content-only inquiry can also cut the other way to **limit** access. Consider Governor Josh Shapiro's Instagram page, for which his handle is "governorshapiro," and which identifies him as "Governor of the Commonwealth of Pennsylvania." Governor Josh Shapiro (governorshapiro), INSTAGRAM, https://www.instagram.com/governorshapiro/?hl=en. While Governor Shapiro posts about his positions on various issues facing the Commonwealth, he also posts other content. For example, videos on the Governor's account profess his partiality for Uncrustables, frozen crustless sandwiches commonly filled with peanut butter and jelly. *See, e.g.*, Governor Josh Shapiro (governorshapiro), INSTAGRAM (July 14, 2025), https://www.instagram.com/reel/DMGnTOdtsBv/. Although Uncrustables have nothing to do with the Executive's official responsibilities (as far as I'm aware), the Governor is undoubtedly interacting with constituents and presumably attempting to give them a positive impression. Under the dissent's strict rule, such videos would decidedly not be "records" due to their content. And while I do not take a firm stance either way, I would not foreclose the possibility that public engagement with constituents, on an official government account, might create a "record" in some cases.

Respectfully, as with the majority opinion, I am unsure what, according to the dissent,

qualifies as a "record[ ] 'of' a particular agency," or what type of "content" would satisfy

the statutory test. Since the dissent summarily states it would reverse the Commonwealth

Court's decision and "reinstate the trial court's order requiring [the] District to disclose the

responsive Facebook posts[,]" *id.* at 10, I infer that the content Cagle seeks in the RTKL

request — Facebook posts by Valesky and DeFrancesco (and comments thereto)

"related to homosexuality and [the] District, its officials, employees, or students, or its

curriculum, physical re[s]ources, or electronic resources" — meets the dissent's

threshold. But the dissent does not explain how it concludes that such posts and

comments, across the board, (1) document a transaction or activity of the District; and

(2) were created, received, or retained in connection with a transaction, business, or

activity of the District.

This brings me to the test announced by the Commonwealth Court.[6] As explained

above, even absent a full statutory interpretation by the majority of the RTKL's definition

---

[6] To reiterate, the Commonwealth Court articulated the following, "nonexclusive" factors:

> First, we examine the social media account itself, including the private or public status of the account, as well as whether the account has the "trappings" of an official agency account. We must also consider whether the school board member has an actual or apparent duty to operate the account or whether the authority of the public office itself is required to run the account. Focusing **only** on the trappings of the account, *i.e.*, its appearance or purpose, is likely not dispositive, as we must also examine the universe of responsive posts.

> Second, in examining the school board member's social media posts, we consider the following. Initially, whether such posts prove, support, or evidence a transaction or activity **of an agency**. In resolving the above, the content of the posts may be reviewed to address whether the posts were merely informational in nature, *i.e.*, did not directly prove, support, or evidence the agency's governmental functions. We also address whether the posts were created, received, or retained by law or **in connection with** a transaction, business, or activity of an agency.

(continued…)

of "record," in my view, at the very least the phrase "transaction or activity of an agency" requires some nexus between the transaction or activity and the agency, making the transaction or activity attributable to the agency itself. Viewed through that lens, although I agree with certain aspects of the lower court's test, there are others I would alter or reject.

Starting with the Commonwealth Court's first factor, I agree the "trappings" of the medium[7] might be relevant, though not dispositive, to determining whether the documented transaction or activity is "of an agency." As shown by the Commonwealth Court's precedent, private activity does not become "of the agency" **just because** it occurred on an official agency email account, and agency activity does not escape the RTKL **just because** it occurred on a private email account. *See, e.g.*, *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa. Cmwlth. 2012); *Easton Area School District v. Baxter*, 35 A.3d 1259 (Pa. Cmwlth. 2012); *see also Paint Twp. v. Clark*, 109 A.3d 796, 808-09 (Pa. Cmwlth. 2015) (rejecting claim that a township supervisor's "privatized cell

---

> Third, we consider "official capacity" with regard to the account and the posts. Although the RTKL does not explicitly define "official capacity," we previously addressed whether the information at issue was produced under the agency's authority or subsequently ratified, adopted, or confirmed by the agency, *i.e.*, authorized activity. We explained that the information at issue must be created, received, or retained by public officials in their official capacity, *i.e.*, scope of employment, as public officials. We may consider whether the agency required the posts, the agency directed the posts, or whether the posts furthered the agency's interests.

*Cagle*, 293 A.3d at 800-02 (internal citations and footnotes omitted) (emphasis in original). Although the majority resists labeling the lower court's proposed factors a "test," *see* Majority Opinion at 24, I must agree with the dissent that the lower court "adopted such a test explicitly." Dissenting Opinion at 2. Of course, that does not mean we are bound to it in any way; on the contrary, we are free to reject it in whole or in part.

[7] A "trappings" inquiry does not have to be social-media-specific. Various other media might have the trappings of an agency, including official email addresses, agency websites, and documents on official letterhead.

phone cannot be disclosed because he purchased the phone himself and it is his personal phone number" on the basis that "the phone records between [the supervisor] and the other [t]ownship supervisors pertaining to [t]ownship business constitute a public record"). But just because a factor might not be dispositive, does not mean it is "immaterial" as a rule. Dissenting Opinion at 10. In cases where the nature of the transaction or activity is uncertain, the fact it is performed on an official agency medium, or with the use of agency or publicly funded resources, likely weighs in favor of finding the activity is attributable to the agency, while a private medium tends to show it was private.

Regarding the second factor, I observe the lower court essentially just recited the language of the definition in Section 102 (with some added emphasis on certain words). I question how this quotation of the statute's text provides any insight for "resolving whether a school board member's social media post was 'of an agency' under the RTKL[.]" *Cagle*, 293 A.3d at 800. The only supplementary guidance the Commonwealth Court offered was that "the content of the posts may be reviewed to address whether the posts were merely informational in nature, *i.e.*, did not directly prove, support, or evidence the agency's governmental functions." *Id.* at 801. But it is unclear why content that is merely "informational in nature" could not document an activity of an agency. After all, the word "information" is part of the relevant definition: "**Information**, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." 65 P.S. §67.102 (emphasis added). Plus, as Cagle cogently points out, Section 102 provides examples of types of records that could easily be "informational" in nature: "[t]he term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document." *Id.*; *see also* Cagle's Brief at 22

("[m]aps, photographs, and lists are all informational in nature"). For these reasons, I would not endorse the Commonwealth Court's second factor.

Next, I turn to the Commonwealth Court's third factor, official capacity. As it stands, I would decline to hold that official agency approval or ratification of an individual's actions is needed to make an activity "of the agency."[8] Absent thorough statutory interpretation of the phrase, summarily affirming such a factor could improperly undermine the RTKL's "purpose of promoting 'access to official government information in order to prohibit

---

[8] I note the Commonwealth Court's explanation of "official capacity" — "whether the information at issue was produced under the agency's authority or subsequently ratified, adopted, or confirmed by the agency, *i.e.*, authorized activity[,]" *Cagle*, 293 A.3d at 802 — derives from *In re Silberstein*, 11 A.3d 629 (Pa. Cmwlth. 2011). *Silberstein* involved a RTKL request for, *inter alia*, electronic communications between two York Township commissioners and township citizens pertaining to township development projects, which were maintained on the commissioners' private computers. *See Silberstein*, 11 A.3d at 633. The *Silberstein* court held they were not "public records," reasoning "a distinction must be made between transactions or activities of an agency which may be a 'public record' under the RTKL and the emails or documents of an individual public office holder." *Id.* The court relied on the fact that Silberstein was "not a governmental entity[, but] an individual public official with no authority to act alone on behalf of the Township." *Id.* It determined that "unless the emails and other documents in Commissioner Silberstein's possession were produced with the authority of York Township, as a local agency, or were later ratified, adopted or confirmed by York Township, said requested records cannot be deemed 'public records' within the meaning of the RTKL as the same are not 'of the local agency.'" *Id.* This Court has not passed on the merits of *Silberstein*, but I observe that in more recent decisions, the Commonwealth Court has seemingly moved away from *Silberstein*'s hardline rule. *See Stearns*, 35 A.3d at 95-97 (determining individual council members acted in their official capacity while exchanging emails on their personal accounts about borough business without analyzing whether the council members constituted a quorum or otherwise had authority to bind the agency); *Baxter*, 35 A.3d at 1264 ("While an individual school board member lacks the authority to take final action on behalf of the entire board, that individual acting in his or her official capacity, nonetheless, constitutes agency activity when discussing agency business."); *Penncrest School District v. Rodgers*, 337 A.3d 604 (Pa. Cmwlth. 2025) (holding Valesky and DeFrancesco could create a "record" over email even if they do not individually have authority to transact business or act on behalf of the entire school board). Even in the present case, although the Commonwealth Court relied (at least in part) on *Silberstein*, it recognized "with respect to the disclosure of emails of individual public officials, this [c]ourt's precedents are in apparent tension." *Cagle*, 293 A.3d at 792-93.

secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'" *Levy*, 65 A.3d at 381.[9]  Instead of looking for official agency approval or ratification, I believe the inquiry should focus more broadly on whether the individual was acting in their role as an agency official or employee, or whether they were acting as a private individual.  In other words, **was the conduct within the realm of the individual's agency employment such that the conduct can be attributed to the agency itself?** To my mind, this is the nub of the issue, *i.e.*, whether the activity was "of an agency."  So unlike the Commonwealth Court, rather than considering it to be one of multiple factors, I consider this to be the overarching question.

This leads to my next point: I believe there are other factors — unaddressed by the Commonwealth Court below or the majority here — that could be relevant to this inquiry.  To be perfectly clear, I do not suggest any of these factors must apply to all situations or would necessarily be dispositive, nor do I suggest these are the only relevant factors.  They are meant only to provide some guidance in determining whether an individual employee/official's activity is "of an agency" when it is unclear.  I also note these considerations are not mutually exclusive; some factors might inform the analysis of others.  Ultimately, the inquiry requires a holistic look at the purported "record" and consideration of whether the totality of the circumstances merit a finding that the activity is "of an agency."  My factors are as follows.

First, what was the **purpose** of the activity?  Did the individual intend to perform some government function or otherwise move the needle on a governmental objective?[10]

---

[9] Certainly, if there were official agency approval or ratification, that would strongly suggest (if not prove) the "activity" is "of the agency."  I am clarifying only that I would hold the inverse — a lack of agency approval or ratification — does not necessarily weigh against finding the activity is "of the agency."

[10] The Commonwealth Court raised a similar consideration in the context of its "official capacity factor," when it stated factfinders may consider "whether the posts furthered the (continued…)

For instance, was the activity a call to action for constituents or other officials?  Imagine, for example, a school board member has a child who is a student in the district and plays an instrument in the school band.  If the school board member posts a picture on Facebook of a school band recital with a comment saying he is proud of his child's performance, the post would pertain to the school, but its purpose likely would not be to serve a government function.  Now imagine the school board member made the same Facebook post but included a statement: "This is why you should come to the next school board meeting to support my proposed budget increase for the music department."  The purpose of the latter post would be more closely tied to a governmental objective.[11]

Second, **when and where** did the individual official or employee perform the activity?  Was it during work hours?  Was it on agency premises?  Again, while not

agency's interests."  *Cagle*, 293 A.3d at 802.  I frame this factor differently, as it can be subjective whether someone furthered the agency's interests, and it is possible to act on an agency's behalf without actually benefiting the agency.

[11] "Purpose" also appears to be the linchpin of the statute's second prong.  Recall that even if information documents a transaction or activity of an agency, to qualify as a "record" under the RTKL, it must also be "created, received, or retained pursuant to law or in connection with a transaction, business, or activity of the agency."  65 P.S. §67.102.  Cases involving such information "that is created, received, or retained pursuant to law" are generally easy to resolve, because laws requiring their creation, receipt, or retention usually pertain to the agency itself, not individual members, thus rendering the information clearly "of the agency."  The difficulty arises in cases like this one, which instead implicate the alternate "in connection with" phrase.  This language, like the word "of," suggests a nexus-type requirement.  *See, e.g.*, *in connection with*, Merriam-Webster.com Dictionary, *available at https://www.merriam-webster.com/dictionary/in%20connection%20with* (defining the phrase as an idiom meaning, "in relation to (something) : for reasons that relate to (something)").  But it is not always redundant of the first prong.  In some cases, the nexus requirement imposed by the second prong will make all the difference.  Take one example.  Assume a member of the public attends a school board meeting and takes notes.  The notes would satisfy the first prong of the statute, since they constitute "[i]nformation . . . that documents a transaction or activity of an agency[.]"  65 P.S. §67.102.  They would not, however, satisfy the second prong, since they were not created "in connection with a transaction, business, or activity of the agency."  *Id.*  In that scenario, the "purpose" factor adds little or nothing to an assessment of the first prong, but it is dispositive as to the second.

dispositive, performing an activity while at work at an agency tends to tie the conduct more closely to the agency itself.

Third, who is the **audience**?  If the activity at issue is a communication by an agency official or employee, who was that message directed towards?  Consider the facts of this case, but imagine Valesky and DeFrancesco made the Facebook posts private so only their "friends" could see.  The posts could have a different impact if they had hundreds of "friends" who were constituents in the school district, versus if they had only ten friends, all of whom were close family members who lived outside the school district.  Whether an official or employee is acting in the realm of their agency employment might depend in part on who they are talking to.

Fourth, what is the individual's **job or responsibility** within the agency?  Does the activity reasonably relate to their responsibilities, even if not specifically delineated in a formal job description?  Suppose a member of the school's cafeteria staff made the same Facebook post as one of the board members here.  By the nature of their role within the agency, the cafeteria worker would have less power regarding issues pertaining to curriculum or the books available in the library.  In my view, the same "activity" would be farther removed from the agency's purview and is more likely to be private conduct.

Fifth, as explained above, the **trappings** of the purported "record" — *i.e.*, whether the medium for the activity is presented as official agency action — can be relevant, even if it is not dispositive.

Again, I emphasize these factors are non-exclusive and are meant only to provide a guide for determining whether a transaction or activity of an individual is "of an agency." And I stress that even beyond that question, other terms in the RTKL's definition of "record" arguably give rise to ambiguity.  For instance, assuming *arguendo* the Board members' Facebook posting qualifies as an "activity of an agency," under step (1) we

must consider whether "[i]nformation . . . documents" that activity.  65 P.S. §67.102.

Presumably, the "information" would be the posts themselves.  The Commonwealth Court

has defined the word "documents" as "proves, supports, or evidences."  *Bagwell v. Pa.*

*Dep't of Educ.*, 76 A.3d 81, 91 (Pa. Cmwlth. 2013) (brackets, quotations and citations

omitted).  Assuming that's true, I am unsure that the "information" here — the Facebook

posts themselves — suffice to prove, support, or evidence the "activity" of posting on

Facebook.  In other words, can the activity be proof, support, or evidence of itself?   The

majority does not say.[12]

Similarly, step (2) of the inquiry requires us to ask whether the information was

"created, received or retained pursuant to law or in connection with a transaction,

business or activity of the agency."  65 P.S. §67.102.  But applied in this context, it

appears step (2) might be redundant of step (1).  To satisfy step (1), the theory is that the

Facebook posts are the "information" that "documents" an "activity of an agency" (*i.e.*,

school board members posting on Facebook about the District).  But if the "activity" in

step (1) is the creation of the Facebook posts, is step (2) automatically satisfied because

the Facebook posts were "created . . . in connection with" the Board members' "activity"

of posting on Facebook?  Again, the majority does not say.  It does not address whether

we create surplusage by allowing the "activity of an agency" in step (1) to be the same as

the "activity of the agency" in step (2).  *Cf.* 1 Pa.C.S. §1921(a) ("Every statute shall be

construed, if possible, to give effect to all its provisions.").

---

[12] I observe the RTKL also imposes two other requirements not addressed here.  First, "an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. §67.705. *Id.* Second, the agency must have "possession, custody or control of the identified record[.]" 65 P.S. §67.901.  I am unsure how these requirements apply to online Facebook posts and comments, which presumably exist in digital form on distant servers owned by Facebook. Nevertheless, as these issues are not presently the focus of this litigation, I do not opine on them at this juncture.

Although the Court ignores these questions, I would encourage the parties on remand and future litigants to explore these issues in more depth. For today's purposes, however, I concur with the majority's disposition, which affirms the Commonwealth Court's order remanding the case to the trial court for further factfinding.[13] I agree a remand is required not just to fully consider the announced factors, but also to consider how they apply to Cagle's entire RTKL request. I respectfully dissent, however, from the majority's acquiescence to the Commonwealth's Court's test *in toto*. I would alter the factors provided by the Commonwealth Court as detailed above.

I respectfully concur in part and dissent in part.

---

[13] I certainly do not fault the trial court for failing to apply factors that were not articulated at the time it rendered its decision. Nor do I read the majority opinion as "scold[ing] the trial court" for failing to address those factors. Dissenting Opinion at 5.